

SIDLEY AUSTIN LLP
1501 K STREET, N.W.
WASHINGTON, D.C. 20005
+1 202 736 8000
+1 202 736 8711 FAX

AMERICA • ASIA PACIFIC • EUROPE

January 29, 2020

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/31/20
```

Hon. Jed. S. Rakoff
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

    Re:   *United States v. Petit & Taylor*, 19 Cr. 850 (JSR)

Dear Judge Rakoff:

    We write on behalf of our client, MiMedx Group, Inc. ("MiMedx" or "the Company"), in response to the January 27, 2020 letter submitted to the Court on behalf of Defendants Parker H. Petit and William Taylor ("Defendants' Letter") (ECF #26).

    For the reasons stated in our letter of January 23, 2020 and below, MiMedx respectfully requests that the Court order Defendants, the Securities and Exchange Commission ("SEC") staff, and the Department of Justice ("DOJ") to return or destroy all copies of Exhibit J (ECF #24-10), Exhibit M (ECF #24-13), and Exhibit Q (ECF# 24-17) (together, "the Exhibits"), and any documents referencing the Exhibits in their possession, and quash and strike the Exhibits and any references to them from the public docket, including references in Defendants' Motion to Compel (ECF # 24) ("Defendants' MTC") and Defendants' Letter. As outlined in Section IV below, we further request that the Court order Defendants, the SEC staff, and DOJ to return or destroy any other MiMedx work product that MiMedx's former auditor, Ernst & Young ("EY"), inadvertently produced and that MiMedx identifies in its ongoing review of EY's production.

### I. The Exhibits Memorialize Protected Work Product Prepared by MiMedx in Anticipation of Litigation.

    Defendants fail to overcome MiMedx's showing in its January 23 Letter that the contents of the Exhibits are entitled to protection under the work-product doctrine. Their central argument is that the Exhibits are not work product because EY drafted them.[1] But this argument ignores multiple well-established principles of law.

---

[1] Defendants do not contest: (1) that the disclosure of the Exhibits was inadvertent; (2) that MiMedx took reasonable steps to prevent their disclosure; or (3) that MiMedx took reasonable steps to rectify the error. *See* Fed. R. Evid. 502(b). Rather, they are contesting whether the contents of the documents are protected. If the Court

# SIDLEY

Hon. Jed S. Rakoff
January 29, 2020

As Defendants do not dispute, the impressions, opinions, and legal advice of counsel in whatever form are absolutely protected by the work-product doctrine if they are prepared in contemplation of litigation. *N.Y. Times Co. v. Dep't of Justice*, 939 F.3d 479, 489 (2d Cir. 2019) ("*[E]xcept in the case of mental impressions, conclusions, opinions, or legal theories*, [work-product protection] can be overcome by a showing of substantial need.") (emphasis added). Here, there is no dispute that the contents of the Exhibits reflect this type of information, nor is there any dispute that King & Spalding's ("K&S") investigation on behalf of MiMedx's Audit Committee was conducted in contemplation of active and reasonably anticipated litigation.[2] Thus, the contents of these Exhibits constitute the precise type of opinion work product that the doctrine protects unequivocally.

Instead of addressing the substance of the documents, Defendants fixate on their form: They erroneously contend that, because EY took the notes memorializing K&S's work product that are at issue, those notes cannot be protected. But the work-product protection covers "materials *containing* mental impressions, conclusions, opinions, or legal theories of an attorney or other representative that were prepared in anticipation of litigation." *SEC v. Vitesse Semiconductor Corp.*, 771 F. Supp. 2d 310, 313 (S.D.N.Y. 2011) (emphasis added). There is no requirement that the materials—in this case the notes—must themselves be the attorney's own work product. Indeed, had Defendants subpoenaed the EY representatives who attended the meeting and asked them to testify as to what K&S said at the meeting, that question would undoubtedly violate the work-product doctrine. *See, e.g.*, *United States v. Ghavami*, 882 F. Supp. 2d 532, 539-40 (S.D.N.Y. 2012) ("[A]n attorney's analysis made in anticipation of litigation, but which has not been memorialized … is immune from discovery just as if it had been reduced to writing."). The analysis does not change simply because it was EY representatives who memorialized K&S's work product in contemporaneous notes.

Further, Defendants do not address the precedent in this jurisdiction and others holding that documents created by a company's auditors in the course of an audit can be protected if they reflect work product. For example, *United States v. Deloitte LLP*, 610 F.3d 129, 139 (D.C. Cir. 2010), addressed the precise type of materials at issue here. In *Deloitte*, the D.C. Circuit concluded that a memorandum drafted by a company's independent auditor summarizing a meeting with company lawyers about possible litigation was protected under the work-product doctrine even though it was prepared by the auditor during a financial audit. *See Deloitte* at 610

---

agrees with MiMedx that they are, then, under Rule 502(b), the Court should hold that the disclosure does not operate as a waiver.

[2] Defendants' argument (Defendant's MTC at 3) that the work-product protection does not apply because "*E&Y* prepared the E&Y Memos … for purposes of its audit, *not* for potential litigation" is unavailing. Defendants do not dispute that the memoranda contain K&S's work product and that that work product was prepared for purposes of litigation. As further discussed below, courts have found similar documents prepared by auditors—*i.e.*, memoranda summarizing meetings with counsel about potential litigation—to be protected work product.

2

# SIDLEY

Hon. Jed S. Rakoff
January 29, 2020

F.3d at 136 ("The work-product privilege does not depend on whether the thoughts and opinions were communicated orally or in writing, but on whether they were prepared in anticipation of litigation."). In so holding, the D.C. Circuit rejected the very same arguments that Defendants advance here. Judge Castel reached a similar conclusion in *International Design Concepts, Inc. v. Saks, Inc.*, finding that attorney work product "delivered in confidential *oral* or written report[s] ... to the company's auditors" qualified for work-product protection. No. 05 CIV. 4754(PKC), 2006 WL 1564684, at *1 (S.D.N.Y. June 6, 2006) (emphasis added).

Defendants' argument that the contents of the Exhibits are not protected work product is also premised on an unfounded (and incorrect) inference from a single statement in one of the Exhibits. Specifically, Defendants contend that the statement within one Exhibit, that "[p]rivileged content cannot be shared with EY at this stage," somehow suggests that the contents of K&S's presentation to EY were not attorney work product. This is inaccurate. The "privileged content" at issue in the statement related to historical documents and information that are attorney-client privileged and were purposefully withheld from EY. K&S reviewed the attorney-client privileged material as part of its investigation for the Audit Committee and included it in presentations that K&S made to its client but, as noted, excluded it from the presentation to EY. The Company continues to claim privilege over those materials today. That K&S chose not to provide this attorney-client privileged information to the Company's auditors is in no way a concession that the information it did provide was not work product.[3]

## II. MiMedx Did Not Waive Work-Product Protection.

Defendants' claim that MiMedx waived the work-product protection over these documents likewise fails. Defendants argue that a company's disclosure of work product to its auditor waives the protection. Yet they ignore the great weight of authority holding exactly the opposite. MiMedx's January 23 Letter cited numerous cases determining that a company's disclosure of work product to its auditor does *not* waive work-product protection. Defendants do not address these authorities and instead rely on *Medinol, Ltd. v. Boston Scientific Corp.*, 214 F.R.D. 113, 116 (S.D.N.Y. 2002), which is an outlier that has been narrowed or rejected by numerous Courts in this District and others,[4] and a parenthetical citation in this Court's opinion

---

[3] As a matter of law, courts generally recognize that work-product protection is maintained over materials when provided to company auditors; however, the same protection is not always afforded to attorney-client privileged materials. *See Deloitte*, 610 F.3d at 139. Thus, out of an abundance of caution, attorney-client privileged information that K&S reviewed and relied upon was excluded from K&S's presentations to EY, as well as the Government.

[4] *See, e.g., Am. Steamship Owners Mut. Prot. & Indem. Ass'n, v. Alcoa Steamship Co., et al.*, No. 04 Civ. 4309, 2006 WL 278131, at *2 (S.D.N.Y. Feb 2, 2006) ("I respectfully decline to follow *Medinol*, however, because it appears to be directly in conflict with *Adlman*. In the example from *Adlman* cited...the opinion was provided to an independent auditor, and yet the Second Circuit did not suggest that any waiver might have occurred."); *Vacco v. Harrah's Operating Co.*, No. 07–CV–0663, 2008 U.S. Dist. LEXIS 88158, at *20 (N.D.N.Y. Oct. 29, 2008) ("*Medinol* ... has been almost uniformly rejected as adopting far too restrictive of a view regarding the circumstances under which a waiver can occur ... most courts which have addressed the specific issue of whether

3

# SIDLEY

Hon. Jed S. Rakoff
January 29, 2020

in *SEC v. Gupta*, which recognized that *Medinol*'s analysis applies only where the auditor "d[oes] not share common interests with the corporation," *see* 281 F.R.D. 169, 172 (S.D.N.Y. 2012) (describing *Medinol*'s analysis as applying only where the auditor "d[oes] not share common interests with the corporation"). Defendants do not even attempt to allege there was an "adversarial relationship" between MiMedx and EY. *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 229 F.R.D. 441, 445–49 (S.D.N.Y. 2004). Nor could they make such a showing, where (as here) the company and the auditor worked in a cooperative posture to "prevent, detect, and root out corporate fraud." *Id.*; *see also* (Defendants' Ltr. at 3–4).

Defendants' other claim of waiver is based on the erroneous assertion that K&S shared with EY "the same information that it shared with DOJ and the SEC." (Defendants' Ltr. at 5). As is self-evident, the contents of the Exhibits go far beyond what K&S disclosed to the DOJ and SEC staff. Rather, the Exhibits lay out in extensive detail K&S's investigation plan and strategy, including their plans for witness interviews, document review strategy, and the appropriate scope and subject matter for the internal investigation. The Exhibits also include K&S's recommendations regarding internal management decisions and MiMedx Board composition and governance changes based on investigation findings. This detail regarding K&S's investigation planning and strategy was not shared with the DOJ or SEC staff, and there is nothing in these Exhibits indicating otherwise.

## III. Defendants Have Failed to Demonstrate a Substantial Need for MiMedx's Work Product.

Defendants' invocation of the substantial-need exception fares no better. As an initial matter, the MiMedx work product memorialized in the EY notes is opinion work product. Therefore, any purported "substantial need for the documents is irrelevant," because opinion work product is not subject to the substantial-need exception. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720 (MKB), 2018 WL 1162552, at *4 (E.D.N.Y. Feb. 26, 2018); *accord, e.g., N.Y. Times Co.*, 939 F.3d at 489. Moreover, even assuming substantial need were a relevant consideration here, Defendants fail to demonstrate such a need. *See In re Initial Pub. Offering Sec. Litig.*, 220 F.R.D. 30, 34 (S.D.N.Y. 2003) ("the party seeking discovery" bears the burden to show substantial need). In fact, Sections I and II of Defendants' Letter prove the opposite. Defendants contend that the Exhibits contain "the same

---

the sharing of litigation related statements with outside auditors should result in a waiver have sided with the defendants in eschewing *Medinol*"); *SEC v. Roberts*, No. C 07–04580, 2008 WL 3925451, at *10–11 (N.D. Cal. Aug. 22, 2008) (analyzing and rejecting *Medinol* in its holding that "any disclosures made to the auditors does not amount to a waiver"); *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 237 F.R.D. 176, 183 (N.D. Ill. 2006) (disapproving of *Medinol*'s rationale because "the fact that an independent auditor must remain independent from the company it audits does not establish that the auditor also has an adversarial relationship with the client as contemplated by the work-product doctrine"); *Westernbank Puerto Rico v. Kachkar*, No. CIV. 07-1606 ADC/BJM, 2009 WL 530131, at *7 (D.P.R. Feb. 9, 2009) (stating that *Medinol* has been "roundly criticized for its holding and analysis" and that majority of courts have found no waiver).

4

# SIDLEY

Hon. Jed S. Rakoff
January 29, 2020

information that [MiMedx] shared with DOJ and the SEC." (Defendants' Ltr. at 5). While this is not true, as discussed above, MiMedx has produced the slide decks that K&S created for its presentations to the DOJ and SEC, which we understand DOJ is producing to Defendants, and the Government has provided Defendants with its *Brady* disclosure. Therefore, if the EY memos truly mimic the substance of K&S's presentations to the Government, as Defendants contend, then Defendants will receive the information they say they need in the form of the presentation slide decks, plainly obviating any supposed "substantial need."

Implicitly acknowledging the weakness of their substantial-need argument, Defendants gainsay MiMedx's interest in protecting the documents here. But that is an irrelevant consideration: The work-product determination is not a balancing test. It is Defendants' job to prove a substantial need, not the Court's obligation to weigh Defendants' interests against MiMedx's. Moreover, Defendants' assertions here are not true, and Defendants should know it. Specifically, the Company is currently involved in various active litigation—litigation largely involving the alleged criminal conduct of the Defendants—where its claim of work product over investigative materials is directly at issue, including one litigation in which Mr. Petit is a party. *See Perring v. MiMedx and Parker H. Petit*, Case No. CACE-19-012805 (Fla. 17th Judicial Cir.). Accordingly, MiMedx does have a continuing and genuine interest in keeping its outside counsel's work product protected.

## IV. MiMedx Requests that Defendants, the SEC Staff, and DOJ Destroy Additional Work-Product Protected Documents.

Since EY's inadvertent production came to our attention last week, we have begun reviewing the corpus of EY's production that MiMedx was not given the opportunity to review as a result of a technical error. Our review indicates that EY may have inadvertently produced additional work-product protected information to the SEC, which may have provided it to DOJ and, in turn, the Defendants. When our review is complete, MiMedx will provide the parties a list of Bates numbers identifying the documents EY inadvertently produced that contain MiMedx's protected work product. MiMedx respectfully requests that this Court, consistent with the mechanism set forth in its Model Protective Order,[5] order that Defendants, the SEC, and DOJ be required to return or destroy all copies of any documents that MiMedx identifies as a containing protected work product.

\* \* \*

---

[5] *See* Jed. S. Rakoff Model Protective Order, ¶¶ 11-12.

# SIDLEY

Hon. Jed S. Rakoff
January 29, 2020

      For the foregoing reasons, we respectfully request that your Honor grant our request to quash the Exhibits, along with any reference to the Exhibits in Defendants' MTC and Defendants' Letter, and have these materials removed from the public docket. We further respectfully request that your Honor grant our request that Defendants, the SEC staff, and DOJ be required to return or destroy all copies of the Exhibits referenced above in their possession in whatever format, and further order that the parties return or destroy all copies of any other inadvertently produced work product that MiMedx identifies in its ongoing effort to cure EY's technical error.

      Thank you for your consideration of this application.

Respectfully submitted,

*/s/ David Rody / BCS*

David M. Rody

CC: William Burck
     William Weinreb
     Michael Carlinsky
     Eric Bruce
     Altin Sila
     Scott Hartman
     Eddie Imperatore
     Daniel Tracer
     Kevin Comeau
     Ty Cottrill
     Stephen McKenna

**quinn emanuel** trial lawyers | boston

111 Huntington Avenue, Suite 520, Boston, Massachusetts 02199-7626 | TEL (617) 712-7100 FAX (617) 712-7200

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/31/20
```

WRITER'S DIRECT DIAL NO.
(617) 712-7114

WRITER'S EMAIL ADDRESS
billweinreb@quinnemanuel.com

January 23, 2020

**HAND DELIVERY**
The Honorable Jed S. Rakoff
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
Room 1340
New York, NY 10007-1312

*19cr850(JSR)*
*USA v Taylor*

Dear Judge Rakoff:

Undersigned counsel respectfully submits this letter on behalf of Defendant William Taylor, who is not present in the courtroom today. I hereby represent that I have discussed with Mr. Taylor his right to personally attend today's status conference and that Mr. Taylor has waived his right to personally attend these proceedings.

Respectfully submitted,

William D. Weinreb
Michael T. Packard

*Counsel for William Taylor*

2

**quinn emanuel urquhart & sullivan, llp**
LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE | BOSTON | SALT LAKE CITY
LONDON | TOKYO | MANNHEIM | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH | SHANGHAI | PERTH | STUTTGART



# Freshfields Bruckhaus Deringer



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/31/20

**Via Hand Delivery**

The Honorable Jed S. Rakoff
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
Room 1340
New York, NY 10007-1312

ERIC B. BRUCE
700 13th Street, NW
10th Floor
Washington, DC 20005-3960
Tel +1 202 777 4545
Fax +1 202 777 4555
Eric.Bruce@freshfields.com

January 23, 2020

Re:  *United States of America v. Parker H. Petit and William Taylor*, No. 19 Cr. 850 (JSR)

Dear Judge Rakoff:

Undersigned counsel respectfully submits this letter on behalf of Defendant Parker H. Petit, who is not present in the courtroom today. I hereby represent that I have discussed with Mr. Petit his right to personally attend today's status conference and that Mr. Petit has waived his right to personally attend today's proceedings.

Respectfully submitted,

Eric B. Bruce
Altin H. Sila
Freshfields Bruckhaus Deringer US LLP

The Freshfields Bruckhaus Deringer US LLP partners include members of the Bars of the State of New York and the District of Columbia, Solicitors of the Supreme Court of England and Wales and Rechtsanwälte of Germany

Abu Dhabi  Amsterdam  Bahrain  Beijing  Berlin  Brussels  Cologne  Dubai  Düsseldorf  Frankfurt am Main  Hamburg  Hanoi  Ho Chi Minh City  Hong Kong  London  Madrid  Milan  Moscow  Munich  New York  Paris  Rome  Shanghai  Singapore  Tokyo  Vienna  Washington



# Freshfields Bruckhaus Deringer



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/31/20

**Via Hand Delivery**

The Honorable Jed S. Rakoff
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
Room 1340
New York, NY 10007-1312

ERIC B. BRUCE
700 13th Street, NW
10th Floor
Washington, DC 20005-3960
Tel +1 202 777 4545
Fax +1 202 777 4555
Eric.Bruce@freshfields.com

January 23, 2020

Re:   *United States of America v. Parker H. Petit and William Taylor*, No. 19 Cr. 850 (JSR)

Dear Judge Rakoff:

Undersigned counsel respectfully submits this letter on behalf of Defendant Parker H. Petit, who is not present in the courtroom today. I hereby represent that I have discussed with Mr. Petit his right to personally attend today's status conference and that Mr. Petit has waived his right to personally attend today's proceedings.

Respectfully submitted,

Eric B. Bruce
Altin H. Sila
Freshfields Bruckhaus Deringer US LLP

The Freshfields Bruckhaus Deringer US LLP partners include members of the Bars of the State of New York and the District of Columbia, Solicitors of the Supreme Court of England and Wales and Rechtsanwälte of Germany

Abu Dhabi  Amsterdam  Bahrain  Beijing  Berlin  Brussels  Cologne  Dubai  Düsseldorf  Frankfurt am Main  Hamburg  Hanoi  Ho Chi Minh City  Hong Kong  London  Madrid  Milan  Moscow  Munich  New York  Paris  Rome  Shanghai  Singapore  Tokyo  Vienna  Washington

**quinn emanuel** trial lawyers | boston

111 Huntington Avenue, Suite 520, Boston, Massachusetts 02199-7626 | TEL (617) 712-7100 FAX (617) 712-7200



WRITER'S DIRECT DIAL NO.
(617) 712-7114

WRITER'S EMAIL ADDRESS
billweinreb@quinnemanuel.com

January 23, 2020



**HAND DELIVERY**
The Honorable Jed S. Rakoff
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
Room 1340
New York, NY 10007-1312

Dear Judge Rakoff:

Undersigned counsel respectfully submits this letter on behalf of Defendant William Taylor, who is not present in the courtroom today. I hereby represent that I have discussed with Mr. Taylor his right to personally attend today's status conference and that Mr. Taylor has waived his right to personally attend these proceedings.

Respectfully submitted,

William D. Weinreb
Michael T. Packard

*Counsel for William Taylor*

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE | BOSTON | SALT LAKE CITY
LONDON | TOKYO | MANNHEIM | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH | SHANGHAI | PERTH | STUTTGART