```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
UNITED STATES OF AMERICA             :
                                     :
                                     :   19-cr-850 (JSR)
         -v-                         :
                                     :
PARKER H. PETIT and WILLIAM TAYLOR,  :   MEMORANDUM ORDER
                                     :
                                     :
               Defendants.           :
------------------------------------x
```

JED S. RAKOFF, U.S.D.J.

    Defendants Parker H. Petit and William Taylor were indicted on November 25, 2019 on one count of conspiracy to commit securities fraud, make false filings with the Securities and Exchange Commission, and improperly influence the conduct of audits, and one substantive count of securities fraud. Dkt. No. 1. Trial was originally set to begin on July 7, 2020, but, because of the coronavirus pandemic, jury trials in this District were temporarily put on hold and the trial had to be postponed. Over the following months, however, the Southern District of New York developed a phased re-entry plan and began working towards the resumption of criminal jury trials.[1] In response, the parties here, on August 14, 2020, jointly requested that this case be tried before the year is out.

---

[1] See United States District Court for the Southern District of New York, "2020 Phased Re-Entry Plan (COVID-19)," June 20, 2020, https://nysd.uscourts.gov/sites/default/files/2020-06/reentry%20public%20%286.22.20%29.pdf.

1

Acceding to that request, the Court scheduled trial to begin on October 26, 2020.

On October 5, 2020, however, the defendants -- in what has all the earmarks of a last-minute delaying tactic -- filed the instant motion, seeking to adjourn the trial indefinitely. Dkt. No. 74. For reasons set forth below, the motion is denied, and the trial will commence, as scheduled, on October 26, 2020.[2]

I.   Background

As part of the re-entry plan, criminal trials that proceed this autumn in the Daniel Patrick Moynihan Courthouse will do so, not in a judge's ordinary courtroom, but in one of two large courtrooms on the 26th floor that can easily accommodate social distancing. As relevant to this motion, there have been five notable changes to these courtrooms:

- To ensure that the jury is socially distanced, a second jury box has been constructed in the gallery, where some members of the jury will sit;

---

[2] In the alternative, the defendants request that the Court adopt eight specific measures, which, they claim, would ease some of the logistical challenges facing them in this trial. See Memorandum of Law in Support of Parker H. Petit's and William Taylor's Motion for an Adjournment ("Def. Mem."), Dkt. No. 75, at 15. The Court will address these alternative requests in a separate Order.

2

- To ensure that witnesses can safely testify without a mask obstructing their face, a plexiglass encasement has been constructed around the witness stand;
- To ensure that attorneys can safely address the jury and question witnesses without masks obstructing their faces, a plexiglass encasement has been constructed around the front, top, and sides of the attorney podium;
- To ensure that attorneys and parties practice social distancing, each counsel's table is limited to three seats;
- To ensure that members of the gallery practice social distancing, maximum occupancy is limited to 11 individuals, with certain "overflow" courtrooms arranged so that additional members of the gallery can watch the live proceedings on monitors while practicing social distancing.

See generally Declaration of Daniel Koffman ("Koffman Decl."), Dkt. No. 76.

On October 7, 2020, purportedly to prepare for the filing of this motion, defense counsel toured both of the rearranged courtrooms on the 26th floor. See Koffman Decl., ¶¶ 2, 13. But the defendants' motion mistakenly addresses the configuration of the courtroom as it would be set up for a single-defendant trial. Def. Mem. at 4. However, Courtroom 26B, where this trial will proceed, will be set up to accommodate a multi-defendant

3

trial. As a result, many of the defendants' alleged concerns about the setup of the courtroom are simply inapposite.

II. Discussion

The defendants contend that various features of the courtroom layout, coupled with the social ramifications of the pandemic, will somehow deprive them of their constitutional rights. Accordingly, they ask that this trial be adjourned until, in their words, "courtroom logistics and configuration permit a fair trial." Def. Mem. at 1.

As a threshold matter, the Government argues that the defendants have waived this argument because they affirmatively requested a trial date in 2020, knowing full well that the Court had begun to implement many of the above-described changes. Letter from the Government to the Court dated October 15, 2020 ("Gov. Mem."), Dkt. No. 86, at 1-2. In addition, the Government claims, the defendants expressly stated, as recently as August 13, 2020, that they would not move to adjourn the trial date beyond the Fall of 2020. Id. 2. Given that many features of the re-entry plan were released to the public on June 20, 2020, defendants clearly were on notice of many of the alterations of which they now complain, and yet they persisted in demanding a Fall trial.

In response, the defendants contend that they had no intention of seeking an adjournment until they tuned into the

Court's September 24, 2020 public webcast, during which they learned, for the first time, of some the above-described courtroom changes that had not been set forth in the re-entry plan. Def. Mem. at 14; Reply Memorandum of Law in Support of Parker H. Petit's and William Taylor's Motion for an Adjournment, Dkt. No. 93, at 1-2. While this is hard to fathom, since most of these changes enhanced, rather than diminished, defendants' rights, nonetheless, in an excess of indulgence, the Court will proceed to consider the defendants' motion on the merits.

In their motion, defendants lay out four particular concerns. First, the defendants complain that the jurors sitting in the second jury box, which is set up in the gallery toward the back of the courtroom, will be unable to see the faces of the defendants, who will themselves be unable to observe those jurors. Def. Mem. at 6. They contend that this setup violates the "fundamental assumption of the adversary system that the trier of fact observes the accused throughout the trial, while the accused is either on the stand or sitting at the defense table." Def. Mem. at 7-8. In actuality, there is no such right, and the only authority defendants cite in its support is a non-precedential concurring opinion by Justice Kennedy in Riggins v.

Nevada, 504 U.S. 127, 142 (1992).[3] Indeed, unless the defendants take the stand, it would be wholly improper for the jury to treat the defendants' appearance as evidence of any kind.[4]

Conversely, assuming arguendo that a trial defendant has a constitutional right to face the jury, the defendants are wrong to suggest that such a right would be implicated in this case. In fact, in Courtroom 26B, defense counsel's tables, at which the defendants will also be seated, will be positioned so that they face the jury.

Second, the defendants assume that "[w]ith only three seats at [counsel] table, either Mr. Petit or Mr. Taylor will be unable to communicate with his counsel in real time." Def. Mem. at 10-11. Such a setup, the defendants argue, undermines their right to effective assistance of counsel under the Sixth Amendment. Id. at 11. Once again, however, these concerns are here misplaced. As configured for multi-defendant trials,

---

[3]   Unless otherwise indicated, in quoting cases all internal quotations marks, alterations, emphases, footnotes, and citations are omitted.

[4]   Riggins, the only case the defendants cite in support of their position, concerned the conditions under which a state could forcibly administer antipsychotic drugs to a trial defendant, where the drugs would affect the defendant's "attitude, appearance, and demeanor at trial." 504 U.S. at 131. The relevant concern in that case was of the jury misperceiving the defendant's demeanor, perhaps making an inference about his character on the basis of some involuntary facial tic. See id. at 134.

Courtroom 26B will have two separate defense counsel tables -- one for Mr. Petit and his attorney and another for Mr. Taylor and his attorney.[5]

Third, the defendants argue that "a juror sitting 60 or more feet from a witness encased in a plexiglass cube with light reflecting off it and creating a glare likely cannot make an informed assessment of the witness's testimony." Def. Mem. 11-12. Likewise, the plexiglass encasement surrounding the attorney podium will interfere "with an examiner's ability to observe witnesses' demeanor." Id. at 12. According to the defense, these issues violate the Confrontation Clause of the Sixth Amendment.

Putting aside the absence of any scientific support for these hypotheses of jurors' perceptual limitations, there is, in any event, no legal right at stake. Defendants try to argue that

---

[5] The defendants also express worry that "the limitations on the number of people in the gallery and the resulting difficulties communicating with other members of the defense team would continue to interfere with effective representation of Mr. Petit and Mr. Taylor." Def. Mem. at 11. While this is perhaps an inconvenience, the Sixth Amendment does not guarantee a defendant the right to have a team of attorneys at his disposal in the courtroom. Here, each defendant will be able to sit no more than six feet away from at least one of his attorneys and telephones will be available to enable private attorney-client communication. The Court finds that such a configuration will not abridge the "open communication" between each defendant and "an attorney." United States v. Triumph Capital Grp., Inc., 487 F.3d 124, 135 (2d Cir. 2007). It will also allow the law firms representing the defendants to bill hordes of attorney fees at their accustomed rate.

7

the conditions violate the Confrontation Clause, which provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." It is undoubtedly true that the Confrontation Clause, among other benefits, "permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility." Maryland v. Craig, 497 U.S. 836, 846 (1990) (quoting California v. Green, 399 U.S. 149, 158 (1970)). The Clause's "preference" for face-to-face confrontation, however, is just that -- a preference -- one that "must occasionally give way to considerations of public policy and the necessities of the case." Id.

Here, the defendants imagine a Confrontation Clause that transforms minor inconveniences into constitutional violations. The Confrontation Clause, however, is far less sensitive to perceptual disturbances than is supposed by the defendants. Indeed, as the Government points out, the Second Circuit has expressed doubt that permitting a witness to testify behind the disguise of dark sunglasses violated the Confrontation Clause. See Morales v. Artuz, 281 F.3d 55, 62 (2d Cir. 2002). The "obscured view" of the witness' eyes, the Second Circuit explained, "resulted in only a minimal impairment of the jurors' opportunity to assess her credibility." Id. at 61.

The Court finds that the plexiglass encasement, and any attendant glares resulting therefrom, poses, at most, a minimal threat to the jurors' opportunity to assess the credibility of witnesses in this trial. Such a minimal disturbance is vastly outweighed by the compelling interest in resuming criminal trials and the compelling need to do so safely. Moreover, the Speedy Trial Act, 18 U.S.C. § 3161, which instructs courts to promote the "swift administration of justice," United States v. Bert, 814 F.3d 70, 82 (2d Cir. 2016), militates against another adjournment.

Finally, the defendants argue that the very fact of the COVID-19 pandemic will prevent them from receiving a fair trial. That is because jurors, unable to "avoid the psychological impact from the menace of COVID-19," will prove unable "to devote sufficient care and attention to the complex accounting matters at issue in this trial." Def. Mem. at 13. On defendants' theory, criminal trials ought to have been prohibited throughout the years 1929 - 1945, since the back-to-back Great Depression and World War II were far more stressful than anything now being experienced. But, in any event, defendants' belittling view of jurors is contrary to the robust, careful, and focused jurors that this Court has uniformly observed through several hundred jury trials over the past nearly 25 years.

III. Conclusion

9

For the foregoing reasons, the defendants' motion to adjourn the trial borders on the frivolous and is hereby denied. The trial will commence at 9:45 a.m. on October 26, 2020 in Courtroom 26B of the Daniel Patrick Moynihan Courthouse.

The Clerk of the Court is directed to close docket entry 74.

SO ORDERED

Dated:   New York, NY
         October 21, 2020                    _____
                                             JED S. RAKOFF, U.S.D.J.