KANKPETC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                          19 CR 850 (JSR)
                                           Telephone Conference
5    PARKER H. PETIT AND WILLIAM
     TAYLOR,
6
               Defendants.
7
     ------------------------------x
8
                                           New York, N.Y.
9                                          October 23, 2020
                                           2:00 p.m.
10   Before:
                    HON. JED S. RAKOFF,
11
                                           District Judge
12
                         APPEARANCES
13
     AUDREY STRAUSS,
14        Acting United States Attorney for the
          Southern District of New York
15   SCOTT HARTMAN
     EDWARD IMPERATORE
16   DANIEL TRACER
          Assistant United States Attorneys
17
     FRESHFIELDS BRUCKHAUS DERINGER US LLP
18        Attorneys for Defendant Petit
     BY:  ERIC BRENDAN BRUCE
19        JENNIFER LOEB
          -AND-
20   KOBRE & KIM LLP
     BY:  MATTHEW I. MENCHEL
21        AMANDA TUMINELLI

22   QUINN EMANUEL URQUHART & SULLIVAN LLP
          Attorneys for Defendant Taylor
23   BY:  WILLIAM WEINREB
          DANIEL KOFFMANN
24        MICHAEL PACKARD
          KATHLEEN MARINI

25

KANKPETC

1          (The Court and all parties appearing telephonically)

2          THE COURT:  This is Judge Rakoff.

3          Could counsel please identify themselves.

4          MR. HARTMAN:  Good afternoon, your Honor.  Scott

5   Hartman, for the government.  And with me on the line for the

6   government are Edward Imperatore and Daniel Tracer from my

7   office.

8          MR. WEINREB:  Good afternoon, your Honor.  This is

9   William Weinreb, on behalf of Mr. Taylor.  And with me on the

10  line are William Burke, Daniel Koffmann, and Michael Packard.

11  Mr. Taylor is also on the line.

12          MR. BRUCE:  Good afternoon, your Honor.  This is Eric

13  Bruce, along with my colleagues, Jennifer Loeb, Matthew

14  Menchel, Amanda Tuminelli, on behalf of Mr. Petit, who is also

15  on the line.

16          THE COURT:  Thank you, all, for calling.

17          I was a little taken aback by the volume of motions

18  in limine filed in this case.  You should all recognize that

19  there's no right to a motion in limine.  They are a courtesy

20  provided by the Court in cases in order to help flag in advance

21  issues that might otherwise occupy sidebars or recesses, but as

22  you might anticipate, many questions of what will be allowed

23  and not allowed cannot be made -- many decisions on that cannot

24  be made until well into the trial because they may turn on how

25  things have developed, and trials, by their nature, don't

KANKPETC

 1    always go according to plan.  Nevertheless, I will give you my

 2    rulings on those that I think can be ruled on currently, but I

 3    also want to note that all these rulings are subject to the

 4    qualification that things could change.  The most obvious such

 5    instance, which happens, in my experience, very frequently, is

 6    that the Court, on a motion in limine, will exclude a certain

 7    kind of evidence, and then the other side goes and opens the

 8    door, and then I have no choice but to admit that evidence

 9    because it's reasonably responsive to what the other side put

10    in.  And there's no way I can anticipate that in advance.  So

11    all these rulings I'm about to give come with that caveat.

12            The first motion in limine, the defendants move to

13    preclude the government from using certain terms that they

14    consider prejudicial, such as shell company, bribe, kickback,

15    and the like.

16            That motion is denied.  Those are everyday terms

17    familiar to most jurors.  They are not inflammatory.  They

18    describe misconduct, which is what the government is charging,

19    and if they can't be proven beyond a reasonable doubt, of

20    course, that will inure to the benefit of the defendants.  So

21    that motion is denied.

22            The second motion is that the defendants move to

23    preclude the government from introducing evidence of

24    Mr. Petit's wealth.  I think that this should be granted in

25    part and denied in part.  General statements about the wealth

KANKPETC

of any party, or any witness, for that matter, is usually

totally irrelevant and can be prejudicial.  However, the nature

and amount of the defendant's compensation from MiMedx is, as I

understand it, tied in part to the alleged motive and intent

that the defendants had for their alleged misconduct, and in

that context, it can be admitted.  So the best guidance I can

give you at this preliminary stage is a statement, let's say,

on opening statement by the government, if the opening

statement was, and Defendant X is a rich, rich man, that would

be totally improper, but if the statement was something of,

"And Defendant X had a financial motive to do what he did, and

here's what it was," that would be proper.

Third, the government moves to preclude the defendants

from introducing evidence relating to their age, health

conditions, family background, charitable giving, and military

service, or the like.  Once again, this motion is granted in

part and denied in part.  The jury is entitled to have some

basics about a party's background, although I caution the

defense that this cannot be introduced through hearsay, but if,

for example, the defendants took the stand, they could describe

their upbringing and things of that sort, that would be

perfectly proper.

Charitable giving is, I think, less relevant and more

likely to be misleading.  And military service beyond the fact

of military service would probably not be allowed, but, again,

KANKPETC

1   some of this will have to be decided on a question-by-question

2   basis; the most I can do now is give you that general overview.

3           With respect to the fourth motion, the government

4   moves to preclude the defense from introducing evidence

5   relating to punishment and the like.  The defense does not

6   object, and says they have no plans of introducing such

7   evidence.  So that motion is, depending how you like to look at

8   it, it's either moot or granted on consent.

9           Fifth, the government moves to preclude the defense

10  from introducing evidence about the healing effect of MiMedx's

11  product.  I don't really see that this is materially relevant

12  to any issue in this case.  It really doesn't go to good faith.

13  The allegation here is an accounting fraud, and if it was a

14  fraud just because you thought the product was good, that's no

15  defense; if there was no fraud, you don't need any evidence

16  that the product was good.  So that motion is essentially

17  granted.

18          The sixth motion is Mr. Taylor moves to preclude the

19  government from calling witnesses in MiMedx's accounting

20  department, the audit committee, and Cherry Bekaert, MiMedx's

21  outside auditing firm, seeks to preclude them from answering

22  questions about the accounting treatment of the sales at issue

23  in this case.  I think, as I understand it from the

24  government's response, the government primarily wants to ask,

25  if you had known X, or Y, or Z, would you have accounted for

KANKPETC

1    these transactions in the same way you did?  And that is

2    perfectly proper.  It goes to materiality, it goes to

3    concealment.  If we get into more technical accounting issues,

4    I may need to modify this if it begins to look like it's

5    constituting improper expert testimony, but, for now, the

6    motion is denied.

7            Seventh, Mr. Petit moves to preclude the government

8    from having accountants at Cherry Bekaert testify as fact

9    witnesses that the loan to SLR was a related-party transaction

10   that MiMedx was required to disclose in its public filings with

11   the SEC, and that representations from Petit to Cherry Bekaert

12   were false.  Although this was filed, as were several other

13   motions from the defense that we'll talk about later, a week

14   after the cutoff date for motions were due, allegedly because

15   the government had not earlier signaled that it would seek to

16   introduce such evidence in its case, which, I might add, is no

17   excuse whatsoever for filing something without permission of

18   the Court beyond the deadline set by the Court, but we'll talk

19   about all that later.

20           I think I cannot rule on this motion until the

21   question is put to the first accountant to whom it is put,

22   because I think it will turn on both how the question is

23   phrased, and what's been admitted up to then, and so forth.  I

24   could well conceive that question might not be asked or might

25   not be permitted on direct, but might be permitted on redirect,

KANKPETC

so this is a good example of one that I think is appropriate
for the Court to reserve on at this time.

Eighth, the defendants move to preclude the government
from introducing statements from certain unindicted
coconspirators unless and until the Court finds these
individuals qualify as coconspirators.  That used to be the
law.  It hasn't been law for about 30 years.  Statements of the
sort referenced here can come into evidence subject to
connection.  If the connection is not made, I will then
instruct the jury, in fairly specific detail, what they need to
exclude and not take into account, but the statements will come
in at the time proffered.

Ninth, the defense moves to preclude the government
from introducing evidence concerning parallel civil litigation
against defendants.  I'm dubious that this will be admitted,
but I can't rule finally on it.  The government says that they
believe this will be a basis to show motive, bias, et cetera,
but they also say they will only introduce such evidence on
cross-examination.  So when we get to cross-examination, if the
matter comes up, I'll rule on it then.

Tenth, the government seeks to exclude evidence that
after the reporting periods at issue in this case, some of the
four distributors ultimately paid all or part of their
outstanding debts to the company.  That is both irrelevant and
prejudicial, and that motion is granted.

KANKPETC

1          Eleventh, the government seeks to require the defense

2     to make an evidentiary proffer before offering a

3     reliance-on-accountant defense.  I think it's premature.  Let's

4     see if the defense does offer this.  If so, I may allow the

5     government to call rebuttal witnesses, but until unless it's

6     actually offered, I don't think I need to reach that issue.

7          Twelfth, similarly, the government seeks to require

8     the defense to make a factual proffer before introducing

9     evidence of interactions with lawyers to show the defendants

10    acted in good faith.  I'm skeptical that can be done without a

11    waiver of the attorney-client privilege, but, again, it's

12    premature at this point, so we'll deal with it when it is an

13    actuality, if it does become one.

14         Thirteenth, the government seeks to admit evidence of

15    Mr. Petit's prior involvement in a prior enforcement action by

16    the SEC concerning accounting improprieties at Healthdyne, Inc.

17    It's claimed that this is not only 404(b) evidence, but also

18    shows Mr. Petit's knowledge and understanding that certain

19    transactions could be used to conceal the kind of scheme that's

20    charged here in the indictment.  Normally, I would rule on this

21    motion after opening statements – let's see what the defense

22    says about their defense in this case — but assuming, as is so

23    often the case in white collar criminal cases, that the defense

24    is lack of intent, then, subject to further argument, I am at

25    least leaning towards allowing this in with, of course, an

KANKPETC

1    appropriate limiting instruction as to Mr. Taylor.

2            Fourteenth, Mr. Taylor moves to preclude the

3    government from introducing evidence relating to the 2016

4    revenue recognition memo absent a showing that Taylor had

5    knowledge reflected in the memo in 2015, when the contested

6    transactions occurred.  I think the premise of this motion,

7    that the memo postdates conduct charged in the indictment, is

8    wrong, and so that motion is denied.

9            Fifteenth, Mr. Petit moves to preclude a statement

10   concerning the nature and extent of his involvement in the SLR

11   loan made in the so-called white paper, which, as I understand

12   it, the government intends to introduce to try to show that he

13   misled the audit committee by lying to his own lawyers about

14   his involvement in the SLR loan.  I am inclined to think that

15   the probative value of this is more than outweighed by the

16   possibility of confusion and prejudice, and so I grant the

17   motion to exclude.

18           Sixteenth, the defendants move to preclude the

19   government from introducing evidence relating to the audit

20   committee's investigations and findings because they are

21   improper evidence, unduly prejudicial, and so forth.  The

22   government argues this motion is moot because it has agreed not

23   to introduce this evidence in its case in chief, but it

24   reserves the right to introduce the evidence during

25   cross-examination.

KANKPETC

1        So this was a classic case where it would be premature

2   for me to rule on it now.  If and when it comes up later in the

3   trial, I'll rule on it then.

4        Seventeenth, the defense moves to preclude the

5   government from introducing evidence regarding their respective

6   terminations from MiMedx in 2018.  The government says that it

7   had told defense counsel it would not introduce such evidence

8   in its case in chief provided the defense agreed not to

9   question any government witness regarding the separation of any

10  witness from the company following the audit committee report.

11       Again, as that proposed arrangement indicates, it's

12  really premature for me to rule on this now, though I am

13  leaning towards granting the defense motion, but I can't say

14  that for sure until we see how it all plays out.

15       Eighteenth, the defense moves to preclude the

16  government from introducing evidence related to MiMedx's

17  receipt of revenue in 2020.  The government argues this motion

18  is moot because it has agreed not to introduce the evidence in

19  its case in chief.

20       I am again leaning towards probably granting this

21  motion, obviously, but given the government's statement, it's

22  premature to rule on it finally at this point.

23       Nineteenth, the defendants move to preclude the

24  government from introducing any evidence related to AvKARE as

25  irrelevant, prejudicial, et cetera.  It says that the

KANKPETC

1   government had represented they would not put this at issue.

2   I'm, again, leaning towards granting the motion, but I'm not

3   going to make a final decision now.  We'll see how it plays

4   out.  For now, it's premature.

5          Twentieth, the government seeks to preclude defendants

6   from introducing evidence that they did not engage in fraud

7   with customers other than CPN, SLR, Stability, and First

8   Medical.  That motion is granted.

9          Twenty-first, the government moves to preclude the

10  defense from offering the proffered expert opinions of Jason

11  Flemmons.  This relates, also, to a Rule 17 subpoena issue that

12  we'll get to later.  At this point, it's premature; we haven't

13  gotten to the defense case.  I think it is likely that we will

14  have a hearing outside the presence of the jury probably some

15  evening before we get to the -- shortly before we get to the

16  defense case regarding the proffered expert opinions of

17  Mr. Flemmons, but I decline to rule on them now.

18         Twenty-second, the government seeks to exclude

19  cross-examination of certain witnesses on certain admitted or

20  suspected bad acts, such as an arrest for selling marijuana, a

21  conviction for drunk driving, and the like.  While the defense

22  has confirmed that they will not cross-examine regarding these

23  arrests, they say they may seek to show that the witness did

24  not originally disclose certain arrests to the government, and

25  this goes to the cooperation agreement that these witnesses in

KANKPETC

1  some cases had.

2          Again, it's premature for me to rule on this until we

3  get to those circumstances, but I am initially inclined to

4  grant the government's motion.  Incidentally, if either side is

5  about to put a question to a witness that seemingly was either

6  precluded by one of my in limine rulings or that I left open,

7  do not put the question in the hearing of the jury.  We can

8  either have a sidebar, or often it will be just sufficient to

9  say, Judge, this relates to an in limine ruling you made, and

10  you can use the numbers that I'm giving you this afternoon in

11  saying that, but don't put the question until, of course, I

12  have permitted the question, if I do.

13          There was a twenty-third motion in limine received out

14  of time from the defense, which seeks to preclude the

15  government's summary witness, Corina Chanbury, from testifying

16  regarding the effect of the alleged fraud on Mr. Petit's and

17  Mr. Taylor's bonuses.  That motion is denied.

18          There was also filed last night, without permission of

19  the Court, a motion to quash the government's Rule 17 subpoena

20  to the defense expert witness, Jason Flemmons.  I may want to

21  hear further argument on this, either in a few minutes or first

22  thing Monday morning, but my initial take is that the defense

23  doesn't have standing to challenge the subpoena.

24          There was also a joint telephone call made to my

25  chambers on October 21st, a couple of days ago, regarding five

KANKPETC

1    new applications.  I instructed my law clerk to tell counsel

2    that these would be taken up today, but he did hear enough to

3    know what they were generally about.

4         The first was whether to permit the video testimony of

5    Pam Martin in light of her numerous health issues.  That

6    application is granted.  I do note that the government,

7    understandably, is miffed that the defense is making this

8    application when they refused to give a similar courtesy,

9    allegedly, to the government with respect to certain government

10   witnesses.  However, this is the only application that was

11   brought to my attention, and I think they have made out a case.

12   Moreover, the confrontation clause questions don't arise with

13   respect to a defense witness in the way that they would with

14   respect to a government witness.

15        The second application was the defense asked the Court

16   to reconsider its previous order granting in part and denying

17   in part the defense's request for A/V equipment.  By way of

18   background, I granted the defense's request for permission to

19   bring in two trial laptops for realtime transcript feeds,

20   switches and cables, and, indeed, there was a gentleman hired

21   by the defense who was busy in the courtroom earlier today,

22   laying all sorts of switches and cables that was at least

23   interesting to watch.

24        But I have denied defense counsel's request for a flat

25   panel monitor and an A/V table with a skirt.  The defense

KANKPETC

1    recognizes that it failed to provide the Court sufficient

2    context for why those things are necessary.  I will hear from

3    counsel in a minute on that.

4            The third application was the defense sought leave to

5    submit a letter listing the motions in limine they'd like

6    guidance on from the Court before the trial.  The government

7    would also file such a letter.  Thank you, but I've already now

8    accommodated, in effect, that request.

9            Application four was the government request that the

10   Court seek a maximum number of alternative jurors.  The defense

11   takes no position.

12           I think the appropriate number of alternate jurors

13   here is four, which will also work very well with the seating,

14   so we can have eight jurors in one of the parts of the jury box

15   separated by six feet, et cetera, and the other eight in the

16   other jury box.  I will give the defense three peremptory

17   challenges with respect to the alternates, and I will give the

18   government two peremptory challenges with respect to the

19   alternates.

20           And, finally, the government has apparently various

21   orders and affidavits for immunity from three government

22   witnesses and wants to know how to proceed.  My standard

23   practice there is you supply me in advance with the relevant

24   papers, we then, out of the presence of the jury, put the

25   witness on the stand, ascertain that he or she will, in fact,

KANKPETC

1    be invoking his privilege against self-incrimination across the

2    board, and then I sign the order, and then the witness gets

3    called when the witness gets called.

4           Incidentally, in the courtroom we will be using, 24B,

5    there is a side room, which, in a different pre-pandemic

6    situation, could be used for conferences.  I think that's a

7    good place -- that can easily accommodate up to two witnesses

8    who are going to be testifying after whoever is on the stand.

9    I never, ever want to have a situation where one side or the

10   other, when I say call your next witness, says, oh, Judge, he

11   or she is ten blocks away, or he or she didn't think we'd get

12   there today, or anything like that.  But there is, consistent

13   with the courthouse protocols, plenty of room in this

14   conference room right outside the front of the courtroom for at

15   least two pending witnesses.

16          With respect to the selection of the jury, I use the

17   jury box method, which will be slightly affected by the

18   pandemic, but only slightly.  We will bring in a panel of 60

19   prospective jurors.  About 37, I believe, or, anyway, some

20   portion of them will be in the jury room on the first floor of

21   the courthouse, the others will be in a courtroom on the ninth

22   floor, with total video connection.  The jurors will be given

23   seat numbers randomly by the people who run the jury system.

24   So we will have one juror in seat number one, another juror in

25   seat number two, and so forth, and they will be in those seats.

KANKPETC

1          We will meet initially in the courtroom, 26B, at 9:45.

2     When the jurors are all seated, we will go down to begin jury

3     selection.  I will examine Jurors 1 through 12 for cause.  If

4     any of them are replaced for cause, the first one replaced will

5     be replaced by number 13, who will then come and take the seat

6     of the juror who was excused.  So if, for example, two jurors

7     are excused for cause, one number 4 and one number 6, the juror

8     occupying seat 13 would come up and take seat number 4, and the

9     juror occupying seat 14 would come up and take seat number 6.

10          After I've examined the 12 jurors for cause, the

11     parties will exercise their peremptory challenges – six for the

12     government, ten for the defense jointly — and this will be done

13     in rounds.  So in the first four rounds, there will be one

14     challenge by the government, two challenges by the defense; in

15     the final two rounds, it will be one challenge by the

16     government and one challenge by the defense.

17          If a party waives its challenge on a given round, it

18     loses that challenge, but it does not lose its subsequent

19     challenge/challenges unless both sides waive across the board

20     on a given round, in which case, we have our jury.

21          After we've gone through that for the basic jury,

22     we'll go through a similar process for the alternate jurors.

23     We'll have the jurors who are next in line, so to speak, come

24     up and take seats 13, 14, 15, 16, and I'll question them for

25     cause, and we will have two rounds of challenges, and the

KANKPETC

first, it will be two challenges for the defense, one for the

government; the second round, there will be one challenge per

side.

          After the jury is selected, they will be taken to

courtroom 26B, and after a short break, we will have opening

statements and possibly even the first witness.  As I mentioned

before, we will normally sit from 9:45 to 3:45, we will take a

15-minute midmorning break at some point, and we will take an

hour for lunch probably around 12:45 to 1:45, but no break in

the afternoon.  So if the jury comes back at 1:45, they will

sit without a break till 3:45.

          There will be some days when, because of other

matters, we'll have to sit fewer hours I just indicated.  The

only one that I want to mention now is Election Day, when we

will not sit at all.  Every other day, Monday through Friday,

we will sit, though it won't always be the full 9:45 to 3:45.

          Now, let me pause.  I am not giving permission to any

lawyer to reargue any of the motions in limine that I have just

ruled on, so that is forbidden, but if there are other

questions, and there was the one application that I was a

little unclear about, I'm happy to hear from counsel now.  And

I also want to know how long each of you wants for your opening

statement.

          So let's start with -- there was an application from

the defense to put in -- you wanted to give a greater

KANKPETC

1    explanation for -- about a flat panel monitor and A/V table

2    with skirts, so let me hear from whichever defense counsel

3    wants to address that.

4              MR. PACKARD:  Thank you, your Honor.  This is Michael

5    Packard, on behalf of the defendant, William Taylor.

6              Briefly, your Honor, the situation with the table is

7    that we understand the table that is provided as a matter of

8    course has room, essentially, for one laptop on it, and our

9    trial consultant generally, and preferably, would have two

10   laptops on the table, and a lot of that is to make sure that

11   there aren't any hiccups that would delay presentation to the

12   Court, particularly in --

13             THE COURT:  What do you mean by your trial

14   consultants?

15             MR. PACKARD:  I'm sorry.  That's just the name of

16   the -- that's the title for the individual who would be in the

17   hot seat, I think, is the term used on a previous call.

18             THE COURT:  Well, if so, I don't recall it, but are

19   you talking about a lawyer from your firm?

20             MR. PACKARD:  No, sir.

21             Actually, I have a realtime update.  Our hot seat

22   person, our trial consultant, just walked in the room and

23   advised me that he no longer needs a table, having seen the

24   space today.  He just walked into the room where I'm sitting.

25             THE COURT:  Great.  That's terrific.

KANKPETC

1          The reason I'm asking this is while we're voir diring

2     the jury, if you're making use of outside technical people of

3     one sort or another, we need to at least introduce them to the

4     jury, or at least give their names and their companies' names

5     to make sure that no prospective juror has any connection to

6     that.  So keep that in mind when we're selecting the jury.

7          MR. PACKARD:  Yes, your Honor.

8          THE COURT:  Okay.  So it sounds like we're moot on

9     that application.

10          How long does -- let's start with the defense.  How

11    long do each of the defendants want for opening statements?

12          MR. BRUCE:  Your Honor, this is Eric Bruce, on behalf

13    of Mr. Petit.

14          I think we had previously discussed this with your

15    Honor on a prior call, and you indicated --

16          THE COURT:  I think I told you I never allow more than

17    30 minutes on opening statements.  But how much do you want?

18          MR. BRUCE:  Well, if there's any flexibility on that,

19    if we could have an additional five or ten minutes, that would

20    be helpful, but, if not, of course, we'll adhere to whatever

21    your Honor's ruling is.

22          THE COURT:  Well, my impression from -- after a case

23    is over, either I or my law clerk always talk to the jurors,

24    and so I've now had occasion to talk to jurors in over 300

25    trials.  One of the things they tell me was, I found that

KANKPETC

1    opening totally confusing, he got into all that detail, and I

2    didn't have any way to really make sense of it at that point.

3    And that's been one of the reasons why I have imposed a

4    30-minute deadline, to prevent confusion of the jurors.  So I

5    think I'm going to adhere to that, so there will be 30 minutes

6    a side for each of the defendants.

7           Now, how long does the government want?

8           MR. TRACER:  Your Honor, this is Daniel Tracer, for

9    the government.  We would ask for 30 minutes, although we'll do

10   our best to come in shorter than that.

11          THE COURT:  All right.  Very good.  So it's 30 minutes

12   for each party.  That's great.

13          There may be complications because of the pandemic,

14   but in the normal course, I usually pick a jury within, at

15   most, an hour and a half.  And, of course, we can't get started

16   until the jury folks downstairs tell us they're ready, but

17   assuming we were to start at 10:00 o'clock, then we would

18   probably go through all three openings, assuming we have the

19   jury picked by 11:30, and then take lunch at 1:00.  If, by

20   contrast, things don't move as quickly, we may take an early

21   lunch and then have all three openings afterwards.  If worst

22   comes to worst, we'll bifurcate and have one or two openings

23   before and one after, but I would like to avoid that, if we

24   can.

25          Before I take up the last item on my list, which is

KANKPETC

1   the question of sanctions, is there anything else any party

2   wants to raise with the Court?

3           MR. BRUCE:  Your Honor, this is Eric Bruce again, on

4   behalf of Mr. Petit, if I may.

5           Mr. Herenstein had asked us for some background

6   information that would go into a preliminary instruction to the

7   jury.

8           THE COURT:  Yes, thank you very much for raising that.

9           MR. BRUCE:  Yes, of course.

10          THE COURT:  I do this in virtually all my trials, and,

11  again, in talking to the jury afterwards, I've heard unanimous

12  appreciation for doing this.  This should be, at most, a

13  two-page document, and it could be even just one page, that

14  says to the jury:  You will receive, at the end of the case, my

15  detailed instructions on all the issues, but, for now, I just

16  want to give you a heads-up as to some of the issues that will

17  be presented, so you can devote some of your attention to those

18  issues, and these issues are one, two, three, or something like

19  that.

20          What I ask each side is to prepare a no more than

21  two-page proposed instruction of that sort, submit it to me

22  very early.  I like to give this instruction no later than the

23  third day of trial, and it's better the second day, so I would

24  want this instruction by close of business the first day.  And

25  then I will put together the instruction, hold a conference

KANKPETC

1  outside the hearing of the jury, and hear whatever each side

2  has to say about objections, or suggestions, or so forth.

3       By the way, we will typically allot some time at the

4  end of the day for any matters that are going to come up the

5  next day that we can foresee like this one.

6       In addition, of course, if there's more urgency, we'll

7  take them up during a break or even during the lunch break, and

8  worst case at sidebar, but I prefer to avoid lengthy sidebars.

9  Again, all the jurors I've ever talked to said that they were

10 bored stiff while sidebars went on for any length of time.

11      In terms of objections that I may have covered

12 previously, normally, objections should be no more than three

13 words.  The first word is objection, the second word and the

14 third word are either the nature of the objection in English,

15 like hearsay, foundation, or the like, or a reference to the

16 relevant rule of evidence, like 403.  The one addition that

17 we've added today is if it relates to an in limine motion, you

18 can say, "Objection; in limine motion number so-and-so," and I

19 guess even those that's four or five words, I'll allow that

20 exception.

21      Okay.  What else?

22      MR. BRUCE:  Your Honor, Eric Bruce again.

23      Just so we make sure we submit on the preliminary

24 instructions what your Honor wants, did you want an instruction

25 for each of the two defendants or a joint instruction from the

KANKPETC

1    two defendants?

2              THE COURT:  Joint.

3              MR. BRUCE:  Joint?  Okay.

4              THE COURT:  What I'm going to give the jury won't be,

5    of course, just one instruction for all three, for the two

6    defendants and the government.

7              MR. BRUCE:  Understood.

8              THE COURT:  Yes.  Okay, very good.

9              MR. BRUCE:  Thank you, your Honor.

10             THE COURT:  Anything else?

11             MR. HARTMAN:  Your Honor, this is Mr. Hartman, for the

12   government.

13             Judge, we just wanted to raise one issue -- actually,

14   we have a couple of things we wanted to raise with you.

15             One is on Wednesday night, consistent with your

16   Honor's individual practices, we provided the Court with a list

17   of our anticipated witnesses and the order in which we expect

18   to call them.  In the course of preparing that, we realized we

19   failed to list the paralegal who we would expect to call as a

20   summary witness in this case.  So we were seeking permission

21   for the Court to amend that.

22             THE COURT:  Is that the lady whose name I mentioned

23   previously?

24             MR. HARTMAN:  No, your Honor.  That is an economist

25   who will be doing the bonus calculations, but we were also

KANKPETC

1    anticipating calling someone who would read emails and the like

2    and put in evidence that would not come --

3              THE COURT:  What is her name?

4              MR. HARTMAN:  His name is Jacob Pechet, P-e-c-h-e-t.

5              THE COURT:  I'm sorry.

6              MR. HARTMAN:  That's fine.

7              THE COURT:  That will be allowed.

8              MR. HARTMAN:  Thank you, your Honor.

9              The other question we had is about, to the extent we

10   have other issues, would the Court like to hear those now, or

11   do you want to hold off on those till Monday morning?

12   Specifically, this relates somewhat to the subpoena that the

13   defense filed a motion about.  We have some concerns about the

14   disclosures that we've gotten so far and the adequacy of those

15   disclosures, and so we wanted to talk to the Court about that.

16             The other issue is we've identified some areas in some

17   of the defense exhibits that we think may be objectionable, and

18   we wanted to flag those issues for the Court as well, so that

19   that's all teed up.

20             THE COURT:  Well, the latter, again, just strikes me

21   as totally premature.  If I recall correctly, the government

22   and the defense think this case is going to go, what, three,

23   four, even five weeks.  Do I have that right?

24             MR. HARTMAN:  That's --

25             THE COURT:  So there's going to be plenty of time

KANKPETC

before we get to the defense exhibits, so I don't see any

reason why I should deal with them today.

On the other issue, about the subpoena and the scope

of what you receive, I will deal with that in a minute, so

we'll come back to you on that before this call is over.

MR. HARTMAN:  Okay.  Thank you, Judge.  Those are the

only issues we have at this time, then.

THE COURT:  Okay.

Anything from the defense?

MR. BRUCE:  Nothing for Mr. Petit.  Thank you, your

Honor.

MR. PACKARD:  Nothing for Mr. Taylor, your Honor.

THE COURT:  Okay.

So, I was so excited when I got this case because, in

addition to the excellent AUSAs, I saw that the defendants were

represented by some of the most illustrious law firms in the

country.  So I was totally taken aback when it seemed like

repeatedly my rules and my orders were being disregarded.  So

does someone want to speak to that?

MR. WEINREB:  Yes, your Honor.  This is Bill Weinreb,

counsel for Mr. Taylor.

Your Honor, I want to sincerely apologize for

submitting those filings without following the Court's

procedures.  It was just careless of me in not observing the

October 19th deadline for filing motions in limine without

KANKPETC

1    advance permission.  And the Court's absolutely right, the fact

2    that we received things after the deadline is no excuse for not

3    having called to seek permission to file those, but if I can be

4    permitted a word of explanation, it was simply in the rush of

5    responding to things and doing all the last-minute things that

6    lawyers do in advance of a trial.  Frankly, the fact that there

7    had been -- October 19th was a cutoff date slipped my mind, and

8    it was just pure carelessness on my part, and I deeply regret

9    it.  I can only apologize.

10          THE COURT:  Well, thank you for that apology.  I will

11   not impose, then, any sanctions, but I will warn counsel that

12   recidivism will not be taken lightly.

13          All right.  I think the only remaining thing, then, is

14   the government wanted to talk about the responses they've got

15   to the subpoena or something like that?

16          MR. HARTMAN:  Yes, your Honor.

17          So the defense has filed a motion to quash a subpoena

18   that we served on their expert.  And what prompted our sending

19   that subpoena is that we've been engaged in dialogue with the

20   defense about the disclosures that we have received in this

21   case generally and also with respect to Mr. Flemmons.  The

22   parties had agreed on a date for a 26.2 material to be

23   exchanged, and today, we've only received one piece of material

24   for one witness despite the fact that there are numerous

25   witnesses that are listed on the defense witness list.

KANKPETC

1         But, specifically, this is an issue particularly with

2   respect to Mr. Flemmons because while we did receive notice of

3   his testimony, we haven't received an expert report, we haven't

4   received the other types of disclosures that you would

5   typically get with an expert witness.  So we wrote to the

6   defense, and we asked for those things.  We asked for a copy of

7   the report, if there was one; we asked for any drafts of the

8   report; we asked for information about compensation and

9   communications with the expert about the scope of work and the

10  defense request for what the expert would do.  And the response

11  was, you're not entitled to that information, and we're not

12  providing it.

13        So where we are, Judge, is that we -- I know the Court

14  is very focused on expert testimony and the admissibility of

15  expert testimony, and we don't feel that we have sufficient

16  information about this witness and what he would say to

17  properly raise with the Court and litigate issues about what

18  wouldn't be permissible and also to prepare to rebut this

19  evidence, if necessary or appropriate.

20        THE COURT:  All right.

21        Before I hear from defense counsel, is the government

22  calling any experts?

23        MR. HARTMAN:  We are not.

24        THE COURT:  Okay.

25        Is the defense calling any experts other than

KANKPETC

1    Mr. Flemmons?

2              MR. WEINREB:  This is Bill Weinreb again.

3              No, your Honor, we are not.

4              THE COURT:  I'm very sorry this didn't come up sooner

5    because it is an area that has absorbed a lot of my attention

6    over the years.  In civil cases, the Federal Rules of Civil

7    Procedure lay out in great detail what has to be produced with

8    respect to an expert long before trial; indeed, of course, you

9    also get a deposition of the expert in civil cases.

10             In criminal cases, the rule has been much more

11   relaxed.  I proposed, two years ago, to the relevant committee

12   of the federal judiciary a rule that would make the disclosures

13   in criminal cases parallel those in civil cases, other than

14   depositions, and although the committee did not go that far,

15   they have promulgated a proposed new rule, which unless

16   Congress vetoes it, will take effect on December 1st.  But, of

17   course, that's not binding on you because this trial will be

18   over by December 1st.

19             By the way, that's pretty much what I'm going to tell

20   the jury.  I'm going to say this will be a multiweek trial, we

21   hope to finish it by Thanksgiving, though, we can't guarantee

22   that, but we are more than confident that it will be over by

23   the end of November.  So if anyone disagrees with that, say so

24   right now.

25             But, in any event, on that assumption, the new rule

KANKPETC

1   doesn't govern.  But I don't see any reason why there shouldn't

2   be such disclosures from the expert to allow the other side to

3   challenge his opinions.  Inherent in the nature of expert

4   testimony is that it involves a lot of, if you will, silent

5   background about the expertise, training, skills, and so forth

6   of the expert.  This, in part, was an argument, in effect,

7   being made by the defense in this case in some of the motions

8   in limine when they were arguing that some of the government's

9   witnesses that were purportedly fact witnesses were really

10  concealed expert witnesses.  But the point comes down to the

11  same point either way — it is just not fair to put an expert on

12  the stand and expect the other side to be able to meaningfully

13  cross-examine that person without knowing in advance a

14  reasonably detailed account of what that expert is going to

15  say.

16          So here's how I have handled this problem in the past,

17  and I will throw out the alternatives and see if any of them

18  commend themselves.

19          One is to give the party -- often it's the

20  government's expert, and the party that doesn't know what's

21  going on is the defense, but, in this case, it's vice versa --

22  give the party that is not calling the expert a three-hour

23  telephonic deposition with the expert well in advance of when

24  the expert is to be called.

25          The second possibility is for the party calling the

KANKPETC

1    expert to provide the other side with an expert report and

2    expert disclosures more or less modeled on those of Federal

3    Rule of Civil Procedure, I think it's 26.

4         And, in either case, I almost always hold an

5    evidentiary hearing out of the presence of the jury with the

6    witness shortly before the witness testifies to get a sense of

7    what can or cannot be admitted.

8         So let me ask defense counsel, on those first two

9    alternatives, which do you prefer?

10        MR. WEINREB:  Your Honor, this is Bill Weinreb.

11        You put us a bit on the spot because we have two sets

12   of defense counsel here and don't have an opportunity to

13   confer.

14        THE COURT:  That's fair enough.  So let me know by

15   email to my law clerk no later than 5:00 o'clock today which of

16   those two alternatives you prefer.  Don't tell me you don't

17   want either; that will not be acceptable.

18        MR. WEINREB:  Understood.

19        THE COURT:  All right.

20        I think, for the moment, that should satisfy the

21   government.  If there is a deposition or there is an expert

22   report, it's going to have to be in the next week or so, to

23   give the government plenty of time to prepare.

24        MR. WEINREB:  Thank you, your Honor.  Yes.

25        THE COURT:  Okay.  Anything else we need to take up?

KANKPETC

1          MR. WEINREB:  Yes, your Honor.  This is Bill Weinreb.

2          So, given that this is how that issue is going to be

3     handled, would the Court offer us any guidance on the subpoena,

4     the Rule 17 subpoena, that we can convey to Mr. Flemmons?

5          THE COURT:  So Mr. Flemmons, does he work for a

6     company?

7          MR. WEINREB:  He does.

8          THE COURT:  Do they have a lawyer representing him?

9          MR. WEINREB:  They don't, I believe, have a lawyer who

10    would be in a position to represent him directly.  They would

11    have to engage outside counsel to do so.

12         THE COURT:  I mean, they're the ones who have the

13    standing to challenge the subpoena.  There are limited

14    challenges that the defense can bring, but the great bulk of

15    challenges can only be brought by the party receiving the

16    subpoena.

17         MR. WEINREB:  Well, your Honor, we understand that the

18    defense's right to challenge it may be limited.  In this case,

19    we believe that we have made meritorious challenges, which are

20    in the pleading that we filed.  And, in addition, it was our

21    reading of the case law that the recipient of the subpoena can,

22    particularly in this situation where it's an expert for one of

23    the parties, authorize the party to represent them in

24    connection with the subpoena.

25         THE COURT:  I haven't seen any such authorization.  If

KANKPETC

1   you obtain that authorization, I agree, that might solve the

2   problem.  All right.  So I think the best way to handle this

3   is, on Monday, we're getting together at 9:45.  Experience

4   suggests that the jury panel won't be ready until about 10:30,

5   10:15 at the earliest, so we will have a half hour at least.

6   So I will hear then any argument either side wants to make on

7   anything related to the subpoena if the person appearing on

8   behalf of Mr. Flemmons is authorized to represent him.  And

9   I've gotten already from my law clerk some idea of what the

10  issues are, but in a moment of complete weakness, I will

11  authorize both sides, if they want to put in anything further

12  on this issue, they can submit to my law clerk's email, by no

13  later than 5:00 p.m. on Sunday, a letter, not to exceed three

14  single-spaced pages, adding anything else you think might be

15  helpful to the Court when I hear oral argument on this on

16  Monday morning.

17          All right.  Anything else?

18          MR. HARTMAN:  Nothing from the government, your Honor.

19  Thank you.

20          MR. BRUCE:  Nothing from Mr. Petit, your Honor.  Thank

21  you.

22          MR. WEINREB:  And nothing more from Mr. Taylor, your

23  Honor.  Thank you very much.

24          THE COURT:  Very good.  I look forward to seeing you

25  all on Monday, and have a good weekend.  Bye.  * * *