

<div style="float:right">

**ERIC B. BRUCE**

700 13th Street, NW
10th Floor
Washington, DC  20005-3960
Tel +1 202 777 4545
Fax +1 202 777 4555
Eric.Bruce@freshfields.com

November 1, 2020

</div>

**Via ECF**

The Honorable Jed S. Rakoff
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
Room 1340
New York, NY 10007-1312

**Re:**   *United States v. Parker H. Petit and William Taylor*, No. 19 Cr. 850 (JSR)

Dear Judge Rakoff,

Pursuant to Your Honor's permission at the close of trial proceedings on Friday, October 30, 2020, Tr. at 967:6-17, Defendant Parker H. Petit submits this letter to respectfully request that Your Honor reconsider the decision to exclude four previously-offered Defense exhibits identified as DX-125, DX-135, DX-137, and DX-140A. After further consideration, Mr. Petit respectfully submits that these exhibits, which are appended to this letter for reference, qualify for admission based on Rules 106, 801, and 803 of the Federal Rules of Evidence.

**1. Background**

During the first week of trial proceedings, by offering limited exhibit excerpts, the Government sought to curate for the jury a selective, misleading, and inaccurate picture of a critical factual matter in this case: the legitimate business purpose of a $200,000 payment promised from MiMedx to Mark Brooks, the CEO of CPM Medical, on June 26, 2015.

The Government's tactic was starkly visible during testimony of MiMedx's lead sales executive, Michael Carlton. On direct examination, the Government offered a single exhibit, GX-1201, related to the $200,000 payment negotiations. Tr. at 607:4-13. Without any further context or exhibits, the Government proceeded to elicit testimony that Mr. Carlton was "shocked" to "learn" from another MiMedx salesperson that the $200,000 term was a "bribe" for a late-quarter purchase order. Tr. at 603:22-605:17. During cross examination, Your Honor sustained Government objections to four Defense exhibits—DX-125, DX-135, DX-137, and

The Freshfields Bruckhaus Deringer US LLP partners include members of the Bars of the State of New York and the District of Columbia, Solicitors of the Supreme Court of England and Wales and Rechtsanwälte of Germany

Abu Dhabi  Amsterdam  Bahrain  Beijing  Berlin  Brussels  Cologne  Dubai  Düsseldorf  Frankfurt am Main  Hamburg  Hanoi  Ho Chi Minh City  Hong Kong  London  Madrid  Milan  Moscow  Munich  New York  Paris  Rome  Shanghai  Singapore  Tokyo  Vienna  Washington

November 1, 2020
Page 2

DX-140A—all of which show precisely the opposite.[1] These Defense exhibits clarify that Mr. Carlton was not only deeply involved in the agreement negotiations, but that he was potentially "[i]n Pete's office" during the critical moments. Tr. at 766:6-17. Further, they demonstrate that Mr. Petit made no effort to hide the payment from top MiMedx executives, including the company's General Counsel, Alexandra "Lexi" Haden. Indeed, these exhibits make plain that the involved individuals, including Mr. Carlton, raised no objections because they understood that the $200,000 payment was part of an effort to resolve a legitimate business dispute.

At this time, Mr. Petit respectfully requests that Your Honor reconsider admission of DX-125, DX-135, DX-137, and DX-140A on several grounds. ***First***, many of the Defense exhibits fall under well-established hearsay exceptions, including present sense impression and state of mind exceptions pursuant to Rules 803(1) and 803(3) of the Federal Rules of Evidence. ***Second***, some of the Defense exhibits contain verbal acts that give rise to legal consequences pursuant to Rule 801(c) of the Federal Rules of Evidence. ***Third***, based on the Government's decision to selectively introduce portions of these email exchanges within GX-1201, many (if not all) of the Defense exhibits are also admissible under Rule 106 of the Federal Rules of Evidence. This letter addresses each of the four Defense exhibits in turn.

### 2. Defense Exhibit 125 Reveals Individual States of Mind During the Negotiations

Rule 803(3) of the Federal Rules of Evidence provides a hearsay exception for statements that reveal a "declarant's then-existing state of mind," such as "motive, intent, or plan." The Second Circuit has explained "the reasons for the state of mind exception focus on the contemporaneity of the statement and the unlikelihood of deliberate or conscious misrepresentation." *U.S. v. Cardascia*, 951 F.2d 474, 487 (2d Cir.1991). In *U.S. v. DiMaria*, which counsel for Mr. Petit previously cited to the Court, Judge Friendly overturned a criminal conviction where a district court excluded a contemporaneous statement from the defendant that could have allowed the jury to find that the defendant's "existing state of mind" exculpated him from the crime. 727 F.2d 265, 270-71 (2d Cir.1984). The Second Circuit has held that this exception similarly applies where a defendant makes "statements of his intent to undertake a certain act in the future." *U.S. v. Lea*, 131 F. App'x 320, 321–22 (2d Cir. 2005) (citing *U.S. v. Best*, 219 F.3d 192, 198 (2d Cir.2000) ("A declarant's out-of-court statement as to his intent to perform a certain act in the future is not excludable on hearsay grounds."); S*helden v. Barre Belt Granite Employer Union Pension Fund*, 25 F.3d 74, 79 (2d Cir.1994) ("[U]nder [Rule 803(3)], the existence of the plan or intention may be proven by evidence of the person's own statements as to its existence.")). District courts have applied the same analysis to email exchanges. *See, e.g., Beach v. HSBC Bank USA*, 2018 WL 3996931, *2 n.2 (S.D.N.Y. Aug. 21, 2018).

---

[1] For Your Honor's rulings on these exhibits, *see* Tr. at 766:3 (DX-140A), 854:4 (DX-125), 861:13 (DX-135), and 872:19 (DX-137).

November 1, 2020
Page 3

The email exchange contained within DX-125 falls squarely within Rule 803(3). The exchange reveals the states of mind for each of the individuals involved in the chain—Mr. Petit, Mr. Taylor, Mr. Carlton, and Ms. Haden—in deciding whether to rescind cancellation of Mr. Brooks' consulting agreement on June 25, 2015. Ms. Haden states that she "think[s]" that stock options have already vested for another CPM Medical executive.[2] Mr. Taylor then suggests that he "thinks" there are several breaches of the existing Distributor Agreement between MiMedx and CPM Medical. Mr. Carlton further speculates that he "thinks" another individual *may* be able to "fix the deal," even though it is a "[l]ong shot." Based on the states of mind of his fellow officers and employees, Mr. Petit proposes a forward-looking plan to "serve legal remedies" as soon as "tomorrow." It is therefore apparent that Mr. Petit was considering whether to terminate the same distributor that the Government alleges that he bribed just one day later. This fact is highly probative of Mr. Petit's good faith and central to the defense theory in this case.

In sum, each of the statements in DX-125 is offered to demonstrate each declarant's then-existing state of mind, and they are admissible for that reason.

### 3. Defense Exhibit 135 Reveals Individual States of Mind and Records Verbal Acts that Give Rise to Legal Consequences

Rule 801(c) of the Federal Rules of Evidence provides another hearsay exception for "verbal acts that give rise to legal consequences." *U.S. v. Cardascia*, 951 F.2d 474, 486–87 (2d Cir. 1991). District courts routinely recognize that contractual statements qualify as non-hearsay under this rule. *See, e.g., Spencer v. City of New York*, 2011 WL 13257640, *1 (S.D.N.Y. July 18, 2011) ("[s]tatements, such as contracts, that themselves affect the legal rights of the parties constitute 'verbal acts' and are excluded from the definition of hearsay"); *Arasimowicz v. Bestfoods, Inc.*, 81 F. Supp. 2d 526, 528 (S.D.N.Y. 2000) ("the Confirmation Letter was a legally operative document […] admissible as non-hearsay under Rule 801(c)"); *Barner v. City of Harvey*, 1998 WL 664951, at *2 (N.D. Ill. Sept. 18, 1998) (statements about employment "admissible both because of the legal effect of making a threat and for its effect on the hearer").

The email exchange contained within DX-135 constitutes a prototypical legal act. After cancelling Mr. Brooks' consulting agreement on June 25, 2015, Mr. Petit "rescind[ed] the cancellation" of the consulting agreement on the next day. The remainder of the email contains numerous statements that reveal Mr. Petit's state of mind, including Mr. Petit's statement that he

---

[2] Contrary to the Government's assertions, Tr. at 793:18-794:3, Mr. Petit does not intend to offer an implicit advice-of-counsel defense by introducing exhibits that happen to include Ms. Haden. As the General Counsel for MiMedx, Ms. Haden was necessarily involved in drafting revisions to the consulting agreement and distributor agreement. To the extent that Ms. Haden's professional position is relevant, it serves to establish Mr. Petit's state of mind that, by openly and transparently sharing information with other executives, including the most senior lawyer at the company, he was not concerned that the terms were improper.

November 1, 2020
Page 4

"believes" that he is "now fully informed as to the circumstances that have developed around our mutual business activities" and he plans to "resolve[] immediately" the "management issues relative to your businesses." At the conclusion of the email, Mr. Petit also "apologize[s]", which is a verbal act, rather than a statement offered for its truth in this case. Indeed, as with DX-125, Mr. Petit offers DX-134 to demonstrate his state of mind at the time the statements were made—a matter which is probative of his good faith and innocence in this case.

### 4. Defense Exhibit 137 Reveals Individual States of Mind and Contains Content Closely Related to Admitted Exhibits

If a party offers "part of a writing," Rule 106 of the Federal Rules of Evidence permits an adverse party to "require the introduction, at that time, of any other part […] that in fairness ought to be considered at the same time." The Second Circuit has held that Rule 106 permits a party to offer an entire document or a related document when the additional information is "essential to explain an already admitted document, to place the admitted document in context, or to avoid misleading the trier of fact." *Phoenix Assocs. III v. Stone*, 60 F.3d 95, 102-103 (2d Cir. 1995) (quoting *U.S. v. Marin*, 669 F.2d 73, 84 (2d Cir.1982)). It has acknowledged that Rule 106 can "fulfill its function only by permitting the admission of some otherwise inadmissible evidence when the court finds in fairness that the proffered evidence should be considered contemporaneously." *U.S. v. Williams*, 930 F.3d 44, 60 (2d Cir. 2019). District courts regularly find that Rule 106 requires admission of complete and related email chains.[3]

The email in DX-137 is the first email in a chain contained within DX-140 and DX-146, both of which Your Honor has already admitted into evidence. Tr. at 893:20, 900:15. It is logically and temporally related to another Government-offered exhibit, GX-1201 (already in evidence), that concerns the same topic, involves the same individuals, and takes place during the same three-hour timeframe. Whereas DX-1201 attaches a near-final version of the Second Amendment to the Consulting Agreement, DX-137 contains a first draft of the same agreement based on what Ms. Haden "heard on the phone" with Mr. Brooks. The email and attachment within DX-137 provide essential contextual information, including the source of the agreement terms and the evolution of those terms over time.

---

[3] *See, e.g., Funk v. Belneftekhim,* 2020 WL 5645190, at *10 (E.D.N.Y. Sept. 22, 2020) (extended portion of email chain); *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 2011 WL 3738979, at *5 (S.D.N.Y. Aug. 18, 2011), *report and recommendation adopted*, 2011 WL 3734236 (S.D.N.Y. Aug. 24, 2011) (attachment to email chain). District courts beyond the Second Circuit reach similar conclusions. *See, e.g., Loew v. DAI Glob., LLC,* 2020 WL 5369120, at *5 (D. Md. Sept. 8, 2020) (entire email chain); *First Benefits, Inc. v. Amalgamated Life In. Co.,* 2014 WL 6956693, at *2 (M.D. Ga. Dec. 8, 2014) (same).

Separately, the email contained within DX-137 also qualifies for admission because it shows Ms. Haden's state of mind at the time of the drafting process. Ms. Haden explains that she does not "think Brooks was completely understanding the benefit of some of the things that had been put into the last draft," and she offers comments in the draft agreement that address these perceived concerns. As above, Rule 803(3) provides an independent basis for admission.

### 5. Defense Exhibit 140A Reveals Individual States of Mind, Concerns Present Sense Impressions, and Contains Content Closely Related to Admitted Exhibits

The email chain in DX-140A is an extended version of the email contained within DX-137 and, for the reasons specified above, is closely related to GX-1201 (already in evidence). Apart from this relationship to exhibits that have already been admitted, the extended portions of DX-140A contain two statements that fall squarely within hearsay exceptions of their own. *First*, Mr. Taylor asks a question: "I thought we needed him to forgo the stock from June 11 of this year for the $200K?" As Your Honor has noted during trial proceedings, a question is never hearsay. Tr. at 242:25. *Second*, Mr. Carlton appears to reveal his then-current location, "[i]n Pete's office." This statement qualifies as a present sense impression under Rule 803(1) of the Federal Rules of Evidence because Mr. Carlton describes "an event or condition […] while or immediately after [he] perceived it." That Mr. Carlton was likely in Mr. Petit's office while the terms of the agreement were being negotiated is relevant because it refutes Mr. Carlton's testimony that he was uninvolved in this process. It also completes an essential storyline that is conspicuously absent from the Government's curated narrative—Mr. Petit considered the $200,000 payment term openly alongside top MiMedx executives because he believed the payment served a legitimate business purpose to resolve an outstanding business dispute.

### 6. Conclusion

For the foregoing reasons, Mr. Petit respectfully requests that Your Honor reconsider and admit previously-offered DX-125, DX-135, DX-137, and DX-140A, so that the jury can fairly and impartially consider the full documentary record at the earliest opportunity. Thank you for Your Honor's consideration in this matter.

[Signature Block on Next Page]

November 1, 2020
Page 6

        Respectfully submitted,

        /s/ Eric B. Bruce
        Eric B. Bruce
        Jennifer B. Loeb
        Freshfields Bruckhaus Deringer US LLP
        700 13th Street, NW
        10th Floor
        Washington, DC 20005
        Telephone: (202) 777-4577
        Email: Eric.Bruce@freshfields.com
        Email: Jennifer.Loeb@freshfields.com
        Email: Altin.Sila@freshfields.com

        Matthew I. Menchel
        Amanda N. Tuminelli
        Kobre & Kim LLP
        800 Third Avenue
        6th Floor
        New York, NY 10022
        Telephone: (212) 488-1200
        Email: matthew.menchel@kobrekim.com
        Email: amanda.tuminelli@kobrekim.com

        *Attorneys for Parker H. Petit*

(Enclosure)

November 1, 2020
Page 7


cc by electronic means:

Edward Imperatore
Scott Hartman
Daniel Tracer
Assistant United States Attorneys
The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, NY 10007
Telephone: (212) 637-2327
Email: Edward.Imperatore@usdoj.gov
Email: Scott.Hartman@usdoj.gov
Email: Daniel.Tracer@usdoj.gov

*Attorneys for the United States*

William D. Weinreb
Michael T. Packard
Quinn Emanuel Urquhart & Sullivan, LLP
111 Huntington Ave., Suite 520
Boston, MA 02199
Telephone: (617) 712-7100
Email: billweinreb@quinnemanuel.com
Email: michaelpackard@quinnemanuel.com

William A. Burck
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 538-8000
Email: williamburck@quinnemanuel.com

*Attorneys for William Taylor*

# DX-125

| | |
|---|---|
| **Message** | |
| **From:** | Pete Petit [/O=MIMEDX/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=4B58BBA5458449718A9EBFBB9A7A228F-PETE PETIT] |
| **Sent:** | 6/25/2015 9:42:48 PM |
| **To:** | Mike Carlton [mcarlton@mimedx.com] |
| **CC:** | Bill Taylor [btaylor@mimedx.com]; Lexi Haden [lhaden@mimedx.com] |
| **BCC:** | Pete Petit [ppetit@mimedx.com] |
| **Subject:** | Re: 062515 Letter to Mark Brooks |

I agree with this approach. We can continue to cope with this manic-depressive behavior. Like we did previously, I believe tomorrow we need to serve our legal remedies. Also, we need to deal with Chris Reig.

Parker H. "Pete" Petit
Chairman and CEO
MiMedx
1775 West Oak Commons Court
Marietta, GA 30062
Office (770) 651-9101
www.mimedx.com

On Jun 25, 2015, at 9:35 PM, "Mike Carlton" <MCarlton@mimedx.com> wrote:

> Cochrane thinks he can fix this deal and Mark will order $2M. Long shot but Penny (Mark's wife) doesn't want a stressful law suit.
>
> Sent from my iPhone
>
> On Jun 25, 2015, at 8:55 PM, Bill Taylor <BTaylor@mimedx.com> wrote:
>
>> First thing we need to look at distribution agreement. I think there are several breaches and rather than terminate for no cause, we should declare breach and insist on them fixing.
>>
>> Sent from my iPhone
>>
>> On Jun 25, 2015, at 8:09 PM, "Lexi Haden" <LHaden@mimedx.com> wrote:
>>
>>> Yes, I think Reeg did, but it would have only been for what he had vested already. He still has some unvested.
>>>
>>> Alexandra O. Haden
>>> *General Counsel & Secretary*
>>> Office 770-651-9217 | Fax 770-590-3567 | Mobile 678-595-8823
>>>
>>> MiMedx Group, Inc.
>>> 1775 West Oak Commons Ct.
>>> Marietta, GA 30062
>>> lhaden@mimedx.com
>>> www.mimedx.com
>>>
>>> **From:** Mike Carlton
>>> **Sent:** Thursday, June 25, 2015 8:06 PM
>>> **To:** Bill Taylor

**DEFENDANTS' EXHIBIT**

**125**

19 Cr. 850 (JSR)

FOIA Confidential Treatment Requested by Sidley Austin LLP

MMDX_DSCL_0000305
USAO_SDNY_R_002014866

**DX 125-001**

**Cc:** Pete Petit; Lexi Haden
**Subject:** Re: 062515 Letter to Mark Brooks

I think he just exercised

Sent from my iPhone

On Jun 25, 2015, at 7:07 PM, Bill Taylor <BTaylor@mimedx.com> wrote:

> Need to cancel Chris Reeg's as well.
>
> Sent from my iPhone
>
> On Jun 25, 2015, at 6:42 PM, "Pete Petit" <PPetit@mimedx.com> wrote:
>
>
>
> Parker H. "Pete" Petit
> Chairman and CEO
> MiMedx
> 1775 West Oak Commons Court
> Marietta, GA 30062
> Office (770) 651-9101
> www.mimedx.com
>
>
> <Mark Brooks Letter 062515.pdf>

FOIA Confidential Treatment Requested by Sidley Austin LLP

MMDX_DSCL_0000306
USAO_SDNY_R_002014867

**DX 125-002**

# DX-135

| | |
|---|---|
| **From:** | Mark Brooks <incaremed@aol.com> |
| **Sent:** | Friday, June 26, 2015 9:20 AM |
| **To:** | Bill McLaughlin |
| **Subject:** | Fwd: Agreements |

Sent from my iPhone

Begin forwarded message:

> **From:** Pete Petit <PPetit@mimedx.com>
> **Date:** June 26, 2015 at 9:07:34 AM CDT
> **To:** Mark Brooks <incaremed@aol.com>
> **Cc:** Lexi Haden <LHaden@mimedx.com>, Mike Carlton <MCarlton@mimedx.com>
> **Subject: Agreements**
>
> Mark,
> I believe I am now fully informed as to the circumstances that have developed around our mutual business activities. What I was told yesterday was not factual. Therefore, the decision I made to cancel our Consulting Agreement was based on misinformation.
> With this email, I am rescinding the cancellation of your consulting agreement.
> Also, our management issues relative to your businesses will be resolved immediately. I am having discussions on those issues at this moment.
> I can classify some of this as MiMedx growing pains, but there is no excuse for the lack of communication and information flow that has occurred. This is not the way that I wish to conduct business. I certainly apologize, and I would like to schedule a brief call with you.
> Thanks for your patience.
>
> Parker H. "Pete" Petit
> Chairman and CEO
> MiMedx
> 1775 West Oak Commons Court
> Marietta, GA 30062
> Office (770) 651-9101
> www.mimedx.com

This email message and any attachments are for the sole use of the above-named intended recipient(s). This email and any attachments are confidential and proprietary to MiMedx Group, Inc. and may also contain certain privileged attorney-client information. This information is intended only for the use of the individual entity or intended recipient addressed above. You are not to use, disclose, distribute or disseminate this email by any means without the expressed permission of MiMedx Group, Inc. If you are not the intended recipient, or the employee or agent responsible for delivering this email to the intended recipient, you are hereby notified that any use, disclosure, printing, copying, distribution or dissemination by any means of this email or any attachments is strictly prohibited. If you have received this email in error, please immediately notify the sender by telephone at (678) 384-6720 or by reply email and delete this email and any attachments and destroy all hard copies. Thank you.

1

DEFENDANTS'
EXHIBIT
**135**
19 Cr. 850 (JSR)

Confidential

MB00001242

USAO_SDNY_R_000700449

# DX-137

Message

| | |
|---|---|
| **From:** | Lexi Haden [/O=MIMEDX/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=EB1498A0723241F297337826F11C6B75-LEXI HADEN] |
| **Sent:** | 6/26/2015 3:08:28 PM |
| **To:** | Pete Petit [ppetit@mimedx.com]; Bill Taylor [btaylor@mimedx.com]; Mike Carlton [mcarlton@mimedx.com]; Chris Cashman [ccashman@mimedx.com] |
| **Subject:** | Brooks draft agreement |
| **Attachments:** | Brooks, Mark Second Amendment to Consulting Agreement 6.26.15.docx |

Here is a draft of the Brooks agreement. Let me know if you have comments, revisions, etc. Based on what I heard on the phone, I don't think Brooks was completely understanding the benefit of some of the things that had been put into the last draft of the agreement. I do not want to send him this version with my comments in it, as that would be inappropriate for me to do as an attorney. However, I inserted these explanations for your benefit, in case you need to be prepared to explain how certain terms of the agreement help him.

Alexandra O. Haden
*General Counsel & Secretary*
Office 770-651-9217 | Fax 770-590-3567 | Mobile 678-595-8823

MiMedx Group, Inc.
1775 West Oak Commons Ct.
Marietta, GA 30062
lhaden@mimedx.com
www.mimedx.com

**DEFENDANTS' EXHIBIT**
**137**
19 Cr. 850 (JSR)

FOIA Confidential Treatment Requested by Sidley Austin LLP

MMDX_DSCL_0000097
USAO_SDNY_R_002014658

**DX 137-001**

## SECOND AMENDMENT TO CONSULTING AGREEMENT

This SECOND AMENDMENT TO CONSULTING AGREEMENT amends that certain Consulting Agreement that was effective January 23, 2012 and amended effective January 23, 2013 (together, the "Agreement") between MiMedx Group, Inc., a Florida corporation (the "Company") and Mark Brooks, an individual whose business address is 1565 North Central Expressway, Suite 200, Dallas, TX 75080 (the "Consultant"), and is effective as of the ___ day of _____, 2015.

WHEREAS the Consultant has an ownership interest in CPM Medical Consultants, LLC ("CPM"); and

WHEREAS the Company and CPM are parties to a Distributor Agreement that was effective November 27, 2012, and amended on November 27, 2012, January 20, 2014, and March 25, 2014 (together, the "Distributor Agreement");

WHEREAS the Company and Consultant desire to amend the Agreement;

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Company and Consultant agree that the Agreement shall be, and hereby is, amended as follows:

1. Section 2 of the Agreement shall be deleted and replaced with the following:

    "<u>Duties</u>. In conjunction with designated Company staff and under the direction and control of the Company's President & COO or his designee, Consultant shall provide market intelligence, sales consulting and distribution services as requested by the Company from time to time, and other services on a project basis as agreed to by both parties. "

2. Section 3 of the Agreement shall be deleted and replaced with the following:

    "<u>Term</u>. The engagement of Consultant hereunder shall commence on the date hereof and shall continue through July 11, 2018 unless sooner terminated by the happening of any of the following events:

    (a) The death of Consultant;
    (b) Fifteen (15) days following written notice to the Consultant from Company that Consultant has committed a material breach of the Agreement or the Distributor Agreement and such breach has not been cured;
    (c) Fifteen (15) days following written notice to Company from Consultant indicating Consultant's decision to terminate the Agreement."

3. Section 4 of the Agreement shall be deleted and replaced with the following:

    "<u>Compensation</u>.  In consideration of the performance by Consultant of the services set forth herein, Company shall pay to Consultant a one-time consulting fee in the amount of two hundred thousand dollars ($200,000.00).  Company shall also pay to Consultant $5,000 for each of the months of July, August, September, October, and November 2015 for monthly meetings relative

to the duties described in Section 2.  Such meetings shall ordinarily be conducted as conference calls or held in person in Consultant's metro area.  If such meetings are mutually agreed to outside of Consultant's metro area, Consultant will be entitled to a $5,000 travel allowance.  Additional expenses, if applicable, must be contained in a statement of work that is agreed upon by the parties in advance of the expenses being incurred.  Invoices for consulting services shall be submitted to the attention of Accounts Payable, MiMedx Group, Inc., 1775 West Oak Commons Ct., Marietta, GA  30062.

The parties further acknowledge that Company has granted to Consultant the following options to purchase shares of common stock of Company or restricted stock (as indicated) as compensation for services performed under this Agreement:

1/23/2012   – Options to purchase 10,000 shares at $1.17 per share
3/19/2012   – Options to purchase 10,000 shares at $1.20 per share
8/1/2012    – Options to purchase 25,000 shares at $2.33 per share
4/17/2013   – Options to purchase 20,000 shares at $4.99 per share
11/18/2013 – Options to purchase 35,000 shares at $5.52 per share
6/11/2015   – 15,000 shares of restricted stock

The options and restricted stock shall vest on designated anniversary dates in accordance with the terms of the applicable grant agreements, provided that this Agreement is in effect upon each such anniversary.  The option and restricted stock awards are subject to all the terms of the Company's 2006 Assumed Stock Incentive Plan and the applicable grant agreements."

4. In all other respects, the Agreement shall remain in full force and effect.

IN WITNESS WHEREOF, the undersigned have executed this Second Amendment to Consulting Agreement effective as of the date first set forth above.

**MIMEDX GROUP, INC.**                                    **MARK BROOKS**

By:_____                By:_____
William C. Taylor                                                       Mark Brooks
President & COO
Date:_____                Date:_____

FOIA Confidential Treatment Requested by Sidley Austin LLP

MMDX_DSCL_0000099
USAO_SDNY_R_002014660

**DX 137-003**

**SECOND AMENDMENT TO CONSULTING AGREEMENT**

This SECOND AMENDMENT TO CONSULTING AGREEMENT amends that certain Consulting Agreement that was effective January 23, 2012 and amended effective January 23, 2013 (together, the "Agreement") between MiMedx Group, Inc., a Florida corporation (the "Company") and Mark Brooks, an individual whose business address is 1565 North Central Expressway, Suite 200, Dallas, TX 75080 (the "Consultant"), and is effective as of the ___ day of _____, 2015.

WHEREAS the Consultant has an ownership interest in CPM Medical Consultants, LLC ("CPM"); and

WHEREAS the Company and CPM are parties to a Distributor Agreement that was effective November 27, 2012, and amended on November 27, 2012, January 20, 2014, and March 25, 2014 (together, the "Distributor Agreement");

WHEREAS the Company and Consultant desire to amend the Agreement;

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Company and Consultant agree that the Agreement shall be, and hereby is, amended as follows:

1. Section 2 of the Agreement shall be deleted and replaced with the following:

   "<u>Duties</u>. In conjunction with designated Company staff and under the direction and control of the Company's President & COO or his designee, Consultant shall provide market intelligence, sales consulting and distribution services as requested by the Company from time to time, and other services on a project basis as agreed to by both parties. "

2. Section 3 of the Agreement shall be deleted and replaced with the following:

   "<u>Term</u>. The engagement of Consultant hereunder shall commence on the date hereof and shall continue through July 11, 2018 unless sooner terminated by the happening of any of the following events:

   (a) The death of Consultant;
   (b) Fifteen (15) days following written notice to the Consultant from Company that Consultant has committed a material breach of the Agreement or the Distributor Agreement and such breach has not been cured;
   (c) Fifteen (15) days following written notice to Company from Consultant indicating Consultant's decision to terminate the Agreement."

   **Commented [LH1]:** This extends the term of the agreement for 1 month past the vesting of the last tranche of stock given.

   **Commented [LH2]:** This language restricts MiMedx from canceling this Agreement without cause. In order to terminate, there will have to be a material breach, MiMedx will have to notify you of the material breach, and then MiMedx has to give you an opportunity to cure the breach, before MiMedx can ever terminate the agreement.

   **Commented [LH3]:** This language is just to protect MiMedx if you walk away from the contract without cause.

3. Section 4 of the Agreement shall be deleted and replaced with the following:

   "<u>Compensation</u>. In consideration of the performance by Consultant of the services set forth herein, Company shall pay to Consultant a one-time consulting fee in the amount of two hundred thousand dollars ($200,000.00). Company shall also pay to Consultant $5,000 for each of the months of July, August, September, October, and November 2015 for monthly meetings relative

to the duties described in Section 2.  Such meetings shall ordinarily be conducted as conference calls or held in person in Consultant's metro area.  If such meetings are mutually agreed to outside of Consultant's metro area, Consultant will be entitled to a $5,000 travel allowance.  Additional expenses, if applicable, must be contained in a statement of work that is agreed upon by the parties in advance of the expenses being incurred.  Invoices for consulting services shall be submitted to the attention of Accounts Payable, MiMedx Group, Inc., 1775 West Oak Commons Ct., Marietta, GA  30062.

The parties further acknowledge that Company has granted to Consultant the following options to purchase shares of common stock of Company or restricted stock (as indicated) as compensation for services performed under this Agreement:

1/23/2012   – Options to purchase 10,000 shares at $1.17 per share
3/19/2012   – Options to purchase 10,000 shares at $1.20 per share
8/1/2012     – Options to purchase 25,000 shares at $2.33 per share
4/17/2013   – Options to purchase 20,000 shares at $4.99 per share
11/18/2013 – Options to purchase 35,000 shares at $5.52 per share
6/11/2015   – 15,000 shares of restricted stock

The options and restricted stock shall vest on designated anniversary dates in accordance with the terms of the applicable grant agreements, provided that this Agreement is in effect upon each such anniversary.  The option and restricted stock awards are subject to all the terms of the Company's 2006 Assumed Stock Incentive Plan and the applicable grant agreements."

**Commented [LH4]:** This language clarifies that the vesting of the stock is tied only to this consulting agreement, and not to the distributor agreement.

4. In all other respects, the Agreement shall remain in full force and effect.

IN WITNESS WHEREOF, the undersigned have executed this Second Amendment to Consulting Agreement effective as of the date first set forth above.

**MIMEDX GROUP, INC.**                                            **MARK BROOKS**

By:_____        By:_____
William C. Taylor                                                       Mark Brooks
President & COO
Date:_____         Date:_____

# DX-140A

| | |
|---|---|
| **Message** | |
| From: | Mike Carlton [/O=MIMEDX/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=0FD076B358B4428696E86C16D4C21C0E-MIKE CARLTON] |
| Sent: | 6/26/2015 3:25:11 PM |
| To: | Bill Taylor [btaylor@mimedx.com] |
| CC: | Lexi Haden [lhaden@mimedx.com]; Pete Petit [ppetit@mimedx.com]; Chris Cashman [ccashman@mimedx.com] |
| Subject: | Re: Brooks draft agreement |

In Pete's office

Sent from my iPhone

On Jun 26, 2015, at 3:18 PM, Bill Taylor <BTaylor@mimedx.com> wrote:

> I thought we needed him to forgo the stock from June 11 of this year for the $200k?
>
> Sent from my iPhone
>
> On Jun 26, 2015, at 3:08 PM, "Lexi Haden" <LHaden@mimedx.com> wrote:
>
>> Here is a draft of the Brooks agreement. Let me know if you have comments, revisions, etc. Based on what I heard on the phone, I don't think Brooks was completely understanding the benefit of some of the things that had been put into the last draft of the agreement. I do not want to send him this version with my comments in it, as that would be inappropriate for me to do as an attorney. However, I inserted these explanations for your benefit, in case you need to be prepared to explain how certain terms of the agreement help him.
>>
>> Alexandra O. Haden
>> *General Counsel & Secretary*
>> Office 770-651-9217 | Fax 770-590-3567 | Mobile 678-595-8823
>>
>> MiMedx Group, Inc.
>> 1775 West Oak Commons Ct.
>> Marietta, GA 30062
>> lhaden@mimedx.com
>> www.mimedx.com
>>
>> <Brooks, Mark Second Amendment to Consulting Agreement 6.26.15.docx>

**DEFENDANTS' EXHIBIT 140A**
19 Cr. 850 (JSR)

FOIA Confidential Treatment Requested by Sidley Austin LLP

MMDX_DSCL_0000029
USAO_SDNY_R_002014590

DX 140A-001