UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
UNITED STATES OF AMERICA            :
                                    :
                                    :    19-cr-850 (JSR)
        -v-                         :
                                    :
PARKER H. PETIT and WILLIAM TAYLOR, :    <u>MEMORANDUM ORDER</u>
                                    :
                                    :
            Defendants.             :
------------------------------------x

JED S. RAKOFF, U.S.D.J.

    Following a jury trial in November 2020, defendant Parker H.
Petit was convicted of one count of substantive securities fraud
and defendant William Taylor was convicted of one count of
conspiring to commit securities fraud, to make false statements in
filings with the Securities and Exchange Commission ("SEC"), and
to mislead the conduct of audits. These convictions stemmed from
the defendants' participation in a scheme to fraudulently inflate
the reported revenue in 2015 and 2016 for MiMedx, Inc. ("MiMedx),
a publicly traded biomedical company for which Petit served as
chief executive officer and Taylor served as chief operating
officer.

    On February 23, 2021, the Court sentenced Petit to one year
imprisonment and imposed a fine of $1 million. The following day,
the Court sentenced Taylor to one year imprisonment and imposed a
fine of $250,000. On the day of Petit's sentencing, counsel for
MiMedx informed the Court that it would be seeking restitution.

See Dkt. No. 202-1 (email from D. Rody to the Court). At the sentencing, the Court expressed "skepticism" regarding MiMedx's request for restitution but deferred final resolution of restitution for 90 days, pursuant to 18 U.S.C. § 3664(d)(5). Transcript dated February 23, 2021 ("Petit Tr.") at 28:11-15.[1] MiMedx thereafter submitted a formal request for an order of restitution against Petit and Taylor in the amount of $40,201,223.85, including tens of millions of dollars that the company advanced to the defendants' counsel to defend them in this case.[2] For the reasons set forth below, MiMedx's request is denied.

## Discussion

I.   **Whether the Court has Authority to Impose Restitution on Petit.**

Federal courts have no inherent power to order a defendant to pay restitution for his crimes. United States v. Reifler, 446 F.3d 65, 127 (2d Cir. 2006). An applicable statute must authorize it. Pursuant to 18 U.S.C. § 3556, "[t]he court, in imposing a sentence on a defendant who has been found guilty of an offense shall order

---

[1]    The judgments (Dkt. Nos. 153 and 154) indicate that the Court would defer determining restitution for Petit and Taylor until May 21 and May 24, 2021, respectively. Those are clerical errors. The 90-day period expires for Petit on May 24, 2021 and for Taylor on May 25, 2021.

[2]    MiMedx initially sought $42,042,157.31 but reduced that request by $1,840,933.46 following resolution of fee advancement disputes with the defendant's counsel. See Letter from David M. Rody to the Court dated May 20, 2021.

restitution in accordance with [18 U.S.C.] section 3663A, and may order restitution in accordance with [18 U.S.C.] section 3663." Section 3663A is the Mandatory Victims Restitution Act ("MVRA"), and § 3663 is the Victim and Witness Protection Act ("VWPA"), which is the MVRA's discretionary counterpart.

These restitution statutes are triggered by specified convictions. The MVRA applies only in "sentencing proceedings for convictions of . . . an offense against property <u>under this title</u> [i.e., Title 18]" or of certain other specified crimes not relevant here. 18 U.S.C. §3663A(c)(1) (emphasis added). The VWPA similarly authorizes restitution only "when sentencing a defendant convicted of an offense <u>under this title</u>" (again referring to Title 18) or certain drug and transportation law offenses. 18 U.S.C. §3663(a)(1)(A) (emphasis added).

Petit was convicted of a Title 15 offense: securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff, and 17 C.F.R. § 240.10b-5. Although the Second Circuit has not directly addressed whether these restitution statutes cover securities fraud, it has held that district courts cannot impose restitution under these restitution statutes unless the offense is contemplated by those statutes. <u>See, e.g.</u>, <u>United States v. Adams</u>, 955 F.3d 238, 250 (2d Cir. 2020) (holding that neither the MVRA nor the VWPA permits restitution for Title 26 offenses); <u>United States v. Fore</u>, 169

F.3d 104, 110 (2d Cir. 1999) (holding that the MVRA does not permit restitution for Title 42 offenses).

For the same reasons, other courts have held that neither of these statutes permits restitution for Title 15 offenses, such as securities fraud. See United States v. Acord, 790 Fed. App'x 18, 19 (5th Cir. 2020) (per curiam) (holding that "[n]either [the MVRA nor the VWPA] authorizes a restitution award for violations of Title 15"); United States v. Frith, 461 F.3d 914, 919 (7th Cir. 2006) (same). And other district courts in this Circuit have so held. See United States v. Cuti, No. 08-cr-972 (DAB), 2011 WL 3585988, at *6 n.9 (S.D.N.Y. July 29, 2011) ("The [MVRA] and the [VWPA] do not apply to Defendant Tennant because those statutes only provide for restitution after conviction for a Title 18 offense. Defendant Tennant was only convicted of the substantive offense of Securities Fraud, a Title 15 offense."). Because Petit was convicted of securities fraud -- a Title 15 offense -- the MVRA does not mandate and the VWPA does not authorize the Court to impose restitution on Petit.

The Government and MiMedx offer two counterarguments, but neither is persuasive. The first is that the Court can impose restitution on Petit because he was convicted of a Title 18 offense as an aider and abettor of the securities fraud violation, pursuant to 18 U.S.C. § 2. It is true that securities fraud count of which Petit was convicted charged Petit with violating not only "Title

4

15, United States Code, Sections 78j(b) & 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5," but also "Title 18, United States Code, Section 2." Indictment, Dkt. No. 1, at 42. Other courts of appeals are divided over the question of whether a conviction for aiding and abetting a non-Title 18 offense permits restitution under these restitution statutes. Compare United States v. West Indies Transport, Inc., 127 F.3d 299, 315 (3d Cir. 1997) (approving restitution request under the VWPA for a defendant convicted of a Title 33 offense because "[e]ach Title 33 offense also charged a violation of 18 U.S.C. § 2" and "[r]estitution is authorized for violation of 18 U.S.C. § 2."), with United States v. Yielding, 657 F.3d 688, 718-19 (8th Cir. 2011) (rejecting restitution request to the extent it was imposed under the MVRA or the VWPA because the defendant's "conviction for aiding and abetting a Title 42 offense is a conviction under Title 42"); United States v. Elias, 269 F.3d 1003, 1021 (9th Cir. 2001) (rejecting restitution imposed under the VWPA because 18 U.S.C. § 2 "does not establish 'an offense' of which a defendant may be convicted; it merely determines which offenders may be punished as principals").

The Court agrees with the Eighth and Ninth Circuits and holds that the indictment's citation to 18 U.S.C. § 2 does not serve to authorize restitution under the MVRA or the VWPA. The federal aiding and abetting statute "does not create a separate crime. It

simply makes an aider and abettor a principal, and one who aids and abets a violation of a statute has violated that statute." United States v. Singh, 390 F.3d 168, 186 (2d Cir. 2004); see also United States v. Mucciante, 21 F.3d 1228, 1234 (2d Cir. 1994) ("The federal aiding and abetting statute, 18 U.S.C. § 2, does not penalize conduct apart from the substantive crime with which it is coupled."). At most, then, the jury convicted Petit of aiding and abetting a violation of Title 15, not of committing a Title 18 offense.[3]

The second counterargument is that, even if the Court lacks the authority to impose restitution under the MVRA or the VWPA, it can impose restitution as a condition of supervised release under 18 U.S.C. §3563(b)(2). That section provides that a court may require as a special condition of supervised release that the defendant "make restitution to a victim of the offense under section 3556 (but not subject to the limitation of section 3663(a) or 3663A(c)(1)(A))." Thus, a federal court may impose restitution as a condition of supervised release on a defendant convicted of a crime, regardless whether the offense is covered by the MVRA or

---

[3]     In fact, it is not clear that the jury actually convicted Petit of aiding and abetting a violation of securities fraud. Although Count Two charges a violation of 18 U.S.C. § 2, the Court did not instruct the jury on an aiding-and-abetting theory of liability, nor did the Government ask the Court to do so. For the purposes of this motion, however, the Court will assume arguendo that Petit was convicted under the federal aiding and abetting statute.

the VWPA. See Adams, 955 F.3d at 250 (approving restitution order as condition of supervised release even where the defendant was convicted of an offense not covered by the MVRA or the VWPA).

The Court, however, declined during sentencing to impose a term of supervised release on Petit. See Petit. Tr. at 27:15-17 ("I don't see any need for supervised release to follow that imprisonment, so no supervised release term will be imposed."). The judgment entered against Petit on February 24, 2021 accordingly reflects that no term of supervised release was imposed. See Dkt. No. 153 ("Petit Judgment").

MiMedx contends that the Court retains the authority to issue an amended judgment to impose a term of supervised release and, with it, restitution under 18 U.S.C. § 3563(b)(2). It argues that the initial judgment specifically anticipates that an amended judgment "will be entered" after a restitution determination is made. See Petit Judgment at 4. This, according to MiMedx, is consistent with the supervised release statute, which instructs that restitution orders in connection with supervised release shall be made "under section 3556." 18 U.S.C. § 3563(b)(2). Section 3556, in turn, provides that restitution shall be governed by the procedures set forth in 18 U.S.C. § 3664; one such procedure is the provision, discussed above, that permits a sentencing court to determine restitution at any point "not to exceed 90 days after sentencing." 18 U.S.C. § 3664(d)(5). Thus, according to MiMedx,

7

"for the same reasons the Court can still enter MVRA or VWPA restitution after sentencing, it can also still require restitution as a condition of supervised release at sentencing or within 90 days thereafter."[4]

The Court is skeptical that it has the authority, nearly 90 days following the sentencing, to amend the judgment, not to finalize the amount of restitution, but to impose in the first instance a term of supervised release, especially where, as here, the Court would be doing so only as a means to impose an otherwise-unavailable restitution order. A district court lacks the authority to alter a sentence after the time of sentencing, except where Congress has provided otherwise. See United States v. Addonizio, 442 U.S. 178, 189 (1979) ("[O]nce a sentence has been imposed, the trial judge's authority to modify it is . . . circumscribed."). Section 3664(d)(5) is one such exception. It provides:

> If the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final

---

[4]     MiMedx also suggests that Petit "either strategically waived or at least forfeited his arguments that the Court has no statutory authority at this point to impose restitution" because he "was aware of the objection and strategically held it back until after sentencing." MiMedx Reply at 12. But the reverse is also true: MiMedx and the Government, by failing to assert a substantive restitution claim sufficiently in advance of sentencing, did not provide the Court any reason to consider whether supervised release might be appropriate to facilitate a restitution award against Petit.

        determination of the victim's losses, not to exceed 90
        days after sentencing.

18 U.S.C. § 3664(d)(5). This exception permits a district court to enter an amended judgment within 90 days of sentencing, but only to modify the initial judgment in the manner contemplated by the statute: by effectively "fill[ing] in an amount-related blank in a judgment that made clear that restitution was 'applicable'". <u>Dolan v. United States</u>, 560 U.S. 605, 624 (2010). Amending the judgment to impose a term of supervised release would arguably alter the judgment beyond what is contemplated by 18 U.S.C. § 3664(d)(5).

      Accordingly, the Court concludes that it has no legal authority to impose restitution on Petit at this stage. But even if the Court were authorized to amend the judgment in the manner suggested by MiMedx, the Court would not impose restitution on Petit because, as discussed below, MiMedx is not a "victim" under the restitution statutes and is therefore not entitled to recover restitution from either Petit or Taylor.

II.   **Whether MiMedx is a "Victim" Under the Restitution Statutes.**

      Unlike Petit, Taylor was found guilty of a Title 18 offense: conspiracy to commit securities fraud, to make false filing with the SEC, and to mislead the conduct of audits, in violation 18 U.S.C. § 371. Nevertheless, Taylor argues that neither the MVRA nor the VWPA authorizes the Court to impose restitution because

MiMedx is not a "victim" under the terms of those statutes.[5] The Court agrees with Taylor and for that reason holds that MiMedx is not entitled to recover restitution from either defendant.

A district court's statutory authority to award restitution under the MVRA or the VWPA is limited to awards to victims of the offense of conviction. See United States v. Archer, 671 F.3d 149, 170 (2d Cir. 2011). The MVRA and the VWPA define the term "victim" as:

> a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

18 U.S.C. § 3663A(a)(2); 18 U.S.C. § 3663(a)(2).

MiMedx is not a "victim" under either of the restitution statutes. Instructive here is Fed. Ins. Co. v. United States, 882 F.3d 348, 351-52, 368-69 (2d Cir. 2018). In that case, the panel denied a petition for mandamus filed by an employer's subrogee seeking restitution of amounts the employer had paid to settle a dispute arising from an employee's kickback scheme. 882 F.3d at 351. The panel held that the employer (and thus its subrogee) was "precluded" from receiving restitution because it was responsible

---

[5]     Taylor raises a number of other challenges to MiMedx's claim for restitution. The Court does not reach those challenges.

for the employee's fraud under the doctrine of <u>respondeat superior</u>.

<u>Id.</u> at 351-52. The court explained:

> [A]lthough it may not be entirely fitting to describe [the employer] as a 'coconspirator' in [a scheme] carried out by its own employees[,] federal law generally imposes liability on a corporation for the criminal acts of its agents taken on behalf of the corporation and within the scope of the agent's authority via the principle of <u>respondeat superior</u>, unless the offense conduct solely furthered the employee's interests at the employer's expense.

<u>Id.</u> at 368-69.

Judge Oetken recently ruled, for similar reasons, that a corporation-employer did not qualify as a "victim" under the restitution statutes. <u>See</u> <u>United States v. Block</u>, No. 16-cr-595 (JPO), 2018 WL 722854 (S.D.N.Y. Feb. 6, 2018). In that case, the defendant, the chief financial officer of a publicly traded company, was convicted of various substantive and conspiratorial offenses relating to his preparation of fraudulent financial statements for his employer. <u>See</u> <u>id.</u> at *1. Judge Oetken held that the company was not entitled to restitution for three reasons: (1) because the defendant "was acting both within the scope of his employment as an executive officer of the company and, importantly, to benefit the company"; (2) because the employer's "corporate culture" emphasized the importance of employee's meeting financial goals; and (3) because the public's interest in preventing "fraud and questionable accounting in the first place" would "not [be]

advanced by allowing a company to play the victim card after the fact." Id. at *3-*5.

The Court finds Judge Oetken's analysis persuasive and on-point to the instant case. The defendants' criminal actions were within the scope of their employment and designed to benefit MiMedx. Although they were undoubtedly also motivated by personal financial gain, "such gain was a function of anticipated gain by the company. Indeed, the direct and proximate effect of their conduct was to inflate [MiMedx's] share price. That benefit was short-lived, of course, but only because [their] fraud and the problematic accounting [was eventually discovered]." Id. at *3. Thus, MiMedx could have been -- but ultimately was not -- criminally charged as a result of the defendants' conduct. Accordingly, the Court holds that MiMedx is a not victim under the restitution statutes.[6]

MiMedx's counterarguments are unavailing. First, the cases on which MiMedx relies are distinguishable or otherwise inapposite. Many of the cases involve corporate employers seeking restitution from a defendant who was convicted of insider trading or self-

---

[6]   That MiMedx is not a victim under the restitution statutes does not mean that it is left without recourse to recover at least some of the losses it incurred in connection with the defendants' crimes. For example, MiMedx recently sued the defendants to, among other things, recoup the fees paid to the defendants' counsel to defend them in this case. See MiMedx Group, Inc. v. Petit & Taylor, 2021-000718-CA-01 (Fla. Cir. Ct. 2021).

dealing. See, e.g., United States v. Gupta, 925 F. Supp. 2d 581, 586 (S.D.N.Y. 2013) (awarding restitution to defendant's employer where the defendant was convicted of insider trading); United States v. Afriyie, No. 16-cr-377 (PAE), 2020 WL 634425, at *1-2 (S.D.N.Y. Feb. 11, 2020) (same); United States v. Skowron, 839 F. Supp. 2d 740, 745 (S.D.N.Y. 2012). In these cases, the defendant-employee's criminal activity "solely furthered the employee's interests at the employer's expense." Fed. Ins. Co., 882 F.3d at 368-69. Accordingly, the criminal activity could not be imputed to the corporate employer.[7] Other cases cited by MiMedx -- including United States v. Cuti, 778 F.3d 83 (2d Cir. 2015), United States v. Skowron, 529 Fed. App'x 71 (2d Cir. 2013), and United States v. Cummings, 189 F. Supp. 2d 67 (S.D.N.Y. 2002) -- are inapposite because, as Judge Oetken explained (addressing only the first two cases), "it does not appear that the issue of corporate coconspirator status or culpability was raised by the litigants or addressed by court. Therefore they do not appear to constitute precedent on the issue presented here." Block, 2018 WL 722854, at *3.

---

[7]   To be sure, these courts did not justify their decisions by reference to agency principles. But the outcome of the cases -- awarding restitution to companies whose employees commit insider trading or otherwise engage in self-sealing -- is consistent with those principles.

MiMedx also argues that here, unlike the employee-defendants in Fed. Ins. and Block, the defendants hid their criminal activity from MiMedx or otherwise obstructed MiMedx's investigation into their misconduct. For example, MiMedx points to testimony elicited at trial suggesting that the defendants demoted MiMedx's former controller, who later resigned after he raised concerns about MiMedx's revenue recognition practices. This argument is off-base. MiMedx's efforts to root out misconduct, however extensive, do not "immunize the corporation from liability when its employees, acting within the scope of their authority, fail to comply with the law . . . ." See United States v. Twentieth Century Fox Film Corp., 882 F.2d 656, 660 (2d Cir. 1989). Thus, the mere fact that the defendants may have misled other employees or agents of MiMedx does not relieve MiMedx of its criminal liability under the principle of respondeat superior, especially where, as here, the wrongdoing was committed by company's highest officers.

III.   **Conclusion**

For the foregoing reasons, the Court finds that MiMedx is not entitled to restitution as a victim under the MVRA or the VWPA. Accordingly, its request for restitution is denied.[8]

---

[8]   MiMedx also sought a restraining order to prevent the dissipation of the defendants' assets. Because MiMedx is not entitled to recover any restitution, it is likewise not entitled to such a restraining order.

14

SO ORDERED

```
Dated:     New York, NY
           May 23, 2021                        JED S. RAKOFF, U.S.D.J.
```