

500 Fifth Avenue, 40th Floor   New York, NY 10110
phone: 212-257-4880 | fax: 212-202-6417
www.shapiroarato.com

Alexandra A.E. Shapiro
ashapiro@shapiroarato.com
Direct: 212-257-4881

October 6, 2021

Honorable Jed S. Rakoff
United States Courthouse
500 Pearl Street, Room 1340
New York, NY 10007

   Re: *United States v. Parker H. Petit*, No. 19 Cr. 850 (JSR)

Dear Judge Rakoff:

  We represent defendant Parker H. Petit, who is presently scheduled to report for service of his one-year prison sentence on October 21, 2021. We respectfully submit this letter in response to the Court's Order of October 4, 2021, granting leave to file a motion and proposed Order regarding the provision of medical care during Mr. Petit's incarceration.

  As the Court is aware, Mr. Petit has a particularly aggressive form of bladder cancer. ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ By Order dated September 7, 2021, the Court granted Mr. Petit's request to amend his Presentence Report to include this and other information about his medical treatment, and to recommend to the Bureau of Prisons that this medication be made available to him when he is in prison.

  Unfortunately, however, despite the amendment to the PSR, Your Honor's recommendation, and our efforts to ensure in advance that Mr. Petit will be able to continue this critical cancer treatment while incarcerated, BOP has not confirmed that he will be able to receive ████████. After the Court issued its Order on September 7, Mr. Petit hired a prison consultant—a former Assistant Director of BOP with extensive experience implementing BOP's health care policies—to communicate on his behalf with BOP about the need for this medication. But the consultant received a perfunctory response with no commitment to treat Mr. Petit with ████████.

  Mr. Petit understands that physicians who are risk-averse sometimes refuse to ████████████████████████████████████████████████████████████████████████████████████████ Yet as things now stand, it appears that, upon reporting, his best defense against cancer would be withheld from him and that, as a result, his term of incarceration could cause his death, as ████████████████████████████████████████████████████████████████████████████████████ That is what Mr. Petit now faces without the ability to continue ████████████████████████████ during his incarceration.

Accordingly, and for the reasons elaborated further below, we respectfully request that this Court issue an ordering directing the BOP (1) to allow Mr. Petit to bring a two months' supply of ▓▓▓▓ into prison with him when he reports to serve his sentence; (2) either continuously stock the prison commissary with a supply of ▓▓▓▓ throughout his period of incarceration and permit Mr. Petit to purchase the medication from the commissary, or permit Mr. Petit to receive replenishments from family members when they visit him; (3) to permit Mr. Petit to continue his treatments of ▓▓▓▓ and (4) to confirm to the Court in writing, by no later than October 14, 2021, that it will do each of the above.[1]

We have conferred with AUSA Daniel Tracer, who conveyed that the government opposes the application and requests an opportunity to discuss the matter with the Court.

## DISCUSSION

Mr. Petit was charged with conspiracy under 18 U.S.C. § 371 and securities fraud under 15 U.S.C. §§ 78j(b), 78ff, and 17 C.F.R. § 240.10b–5. The jury acquitted Mr. Petit of conspiracy and convicted him of securities fraud. Mr. Petit's Presentence Report detailed his battle with bladder cancer, ▓▓▓▓ and his course of treatment. PSR ¶ 102. Mr. Petit has a particularly aggressive form of bladder cancer ▓▓▓▓

At the sentencing hearing, the government argued that Mr. Petit's cancer should not deter the Court from imposing a prison sentence because Mr. Petit would be able to receive adequate cancer treatment while incarcerated. The government provided a letter from Dr. Diane Sommer stating that "If Mr. Petit is prescribed medications that are not explicitly on the [National Formulary of medications], substantially similar equivalents would be prescribed." Dkt. 150-3 at 3. Dr. Sommer attached an "Outline of Bureau of Prisons Care Levels and Examples" that stated, "Until an inmate comes into the BOP and is evaluated by a health care provider, the Presentence Report (PSR) is the BOP's principal resource for initially assessing medical conditions. The Court can assist the BOP in this process by requesting that the PSR contain complete and current information regarding the medical and mental health status of the inmate…." Dkt. 150-3 at 5.

---

[1] If the BOP does not confirm that it will provide, or permit Mr. Petit access to, ▓▓▓▓ as directed, or if the BOP should otherwise restrict Mr. Petit's access to ▓▓▓▓ during the period of his incarceration, Mr. Petit reserves his rights under 18 U.S.C. § 3582(c)(1)(A)(i) to file a motion for reduction of sentence based on the extraordinary and compelling reasons that without this life-saving treatment, his incarceration could cause his death.

    During the sentencing hearing, Mr. Petit asked for leniency due to his age and health. Mr. Petit told the Court: "My cancer requires routine scans every three months and removal of tumors which continue to reappear. If that does not happen, those tumors get embedded in the bladder wall. Once that happens, cancer can spread to other parts of the body." Tr. 22-23. He explained that "because of this bladder cancer, I am concerned that being incarcerated could be a death sentence."

    The Court stated that a below guidelines sentence was warranted, but explained:

> I am not concerned…that his health is such that the Bureau of Prisons can't properly handle it. The government submitted a very fine letter from Dr. Diane Sommer, who, as she points out, that with the aging of the population in the prison system and with other developments, there are not now just one but several prison hospitals that are quite capable of dealing with the kinds of serious cancers and other serious problems that aging defendants encounter, so I do not agree with defense counsel that sentencing Mr. Petit to prison would be a death sentence in any respect.

Tr. 26-27. The Court sentenced Mr. Petit to one year imprisonment and a $1 million fine, which he has since paid.

    Before his surrender date, Mr. Petit requested that the Court amend his PSR to include a description of his current ▮▮▮▮ treatment and recommend that Mr. Petit be allowed to continue that treatment while incarcerated. Mr. Petit's letter explained that ▮▮▮▮



Mr. Petit attached letters from James Libby, M.D., the doctor who treated his cancer, recommending ▮▮▮▮ and from William Whaley, M.D., his primary care physician, stating that ▮▮▮▮ (Dkt. 208 at 10, 13). Dr. Whaley's letter, for example, explained that ▮▮▮▮ In addition, Dr. Libby explained that Mr. Petit's battle with cancer puts him at a heightened risk of complications caused by the coronavirus. Accordingly, in addition to amending the PSR, Mr. Petit asked the Court to extend his surrender date to October 21, 2021 to allow him to obtain a third dose of the COVID vaccine. The Court granted both requests.

    After the Court amended the PSR, Mr. Petit hired Mr. Philip Wise to assist him in navigating BOP procedures and to ensure that Mr. Petit would be able to receive the necessary cancer treatment while incarcerated. Mr. Wise previously served as the Assistant Director of the BOP, where he was in charge of the formulation and implementation of the BOP's health care policies; he has also served in various other positions within the BOP, including serving as the Warden of two BOP facilities, one of which was a Federal Medical Center. On September 24, 2021, Mr. Wise contacted the BOP on Mr. Petit's behalf to describe Mr. Petit's medical

condition and current treatment protocol and request confirmation that Mr. Petit will be able to continue the ▓▓▓ treatment while incarcerated. (*See* Declaration of Phillip S. Wise ("Wise Decl.") (attached as Exhibit A), ¶10 & Attachment #2). The BOP responded that it would forward the information to the medical team. (*Id.*). It did not confirm that Mr. Petit will be able to continue to take ▓▓▓ Based on his experience as Assistant Director of the BOP for over a decade and his recent communication, Mr. Wise advised Mr. Petit that the BOP *will not* allow him to receive ▓▓▓ while incarcerated. (*See id.* ¶12).



The BOP's own procedures suggest that Mr. Petit will not be able to receive ▓▓▓ The BOP protocol states that all institutions must abide by a National formulary, which lists approved medications. BOP National Formulary, https://www.bop.gov/resources/pdfs/2020_winter_formulary_part_1.pdf (listing approved medications); *see also* BOP Health Management Resources, https://www.bop.gov/resources/health_care_mngmt.jsp (explaining that the Formulary lists medications that are considered by BOP treatment staff). ▓▓▓ is not on the Formulary.

As Drs. Libby and Whaley explained in their letters, ▓▓▓



Accordingly, we respectfully request that the Court direct the BOP to ensure that Mr. Petit has the necessary supply of ▓▓▓ available to him throughout his term of incarceration, and to permit Mr. Petit to continue ▓▓▓ during that period.

**CONCLUSION**

For the foregoing reasons, we respectfully request that this Court grant Mr. Petit's motion and issue an Order directing that the Bureau of Prisons shall:

1. Allow Mr. Petit to bring a two months' supply of ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ into prison with him when he reports to serve his sentence;

2. Ensure that Mr. Petit has access to a sustained supply of ▮▮▮▮▮▮ ▮▮▮▮▮▮ throughout his period of incarceration by either continuously stocking the prison commissary with a supply of ▮▮▮▮▮▮▮▮▮ and permitting Mr. Petit to purchase the medication from the commissary, or permitting Mr. Petit to receive replenishments from family members when they visit him;

3. Permit Mr. Petit to continue his treatments of ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ and

4. Confirm to the Court in writing, by no later than October 14, 2021, that the BOP will comply with each of the above requirements.

A proposed Order is attached.

Respectfully submitted,

/s/ Alexandra A.E. Shapiro

Alexandra A.E. Shapiro

Attachments

cc:   AUSA Scott Hartman (via email)  
       AUSA Daniel Tracer (via email)

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>- against -<br><br>PARKER H. PETIT,<br><br>Defendant. | No. 19-cr-850 (JSR) |

I, PHILLIP S. WISE, pursuant to 28 U.S.C. § 1746, hereby declares as follows:

1. I was employed with the Federal Bureau of Prisons from 1977 until 2002. My assignments with the Bureau of Prisons included service in Federal Penitentiaries, Federal Prison Camps, Federal Medical Centers, and Federal Correctional Institutions. I am fully familiar with the health care and inmate management policies of that organization.

2. From 1999 until my retirement in February 2002, I served as the Assistant Director of the Federal Bureau of Prisons. In this position, I was responsible for the formulation and implementation of health care policies and served as a member of the Executive Staff, which is the senior policy making body of the Bureau. For three years prior to that, I was the Warden of the Federal Medical Center (of the Federal Bureau of Prisons) at Rochester, Minnesota, where I had overall operational responsibility for that facility. While in this position, I was appointed to the Senior Executive Service of the U.S. Government. For two years prior to that, I was the Warden of the Federal Prison Camp at Alderson, West Virginia.

3. From December 2003 through September 2005, I was employed as Vice President of a national firm that provides specialty medical care to inmates in federal and private correctional facilities.

4. Since my retirement from the Bureau of Prisons, I have maintained current knowledge of changes in its health care policies and practices through contact with current BOP officials; monitoring published changes in policy; reviewing reports and documents issued by BOP, the U.S. Department of Justice, and outside agencies; reviewing testimony of BOP officials before oversight bodies as well as court testimony; and analyzing information received from the BOP through the Freedom of Information Act requests.

5. A copy of my resume, which includes my relevant work experience, is attached (Attachment 1).

6. On September 22, 2021, Alexandra A.E. Shapiro, counsel for Mr. Petit, contacted me and asked that I review documents related to the health care requirements of Mr. Petit and address issues related to his incarceration. This statement is prepared in response to that request.

7. In preparation for making this statement, I have reviewed the following program statements of the Federal Bureau of Prisons: Inmate Security Designation and Custody Classification (September 12, 2006); Patient Care (6/13/2014); Medical Designations and Referral Services for Federal Prisoners (1/15/2005); Health Services Administration (6/2014); Pharmacy Services (1/15/2005); the National Formulary of the Federal Bureau of Prisons for Winter 2019; and the website for the Federal Bureau of Prisons (www.bop.gov). In addition, I reviewed a letter from William H. Whaley, M.D. dated August 20, 2021; a letter from James M. Libby, M.D. dated August 30, 2021; a letter from Ms. Shapiro to the Honorable Jed S. Rakoff, dated September 3, 2021; and the Court's Order dated September 7, 2021.

8. From the information available to me, it appears that Mr. Petit has been diagnosed with recurring bladder cancer for which he has received ███████████████
████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████ His physicians (both his primary care provider, Dr. Whaley, who is an oncologist, hematologist, and internist, and his urologist, Dr. Libby) recommend continuation of this course of treatment.

9. ████████████████████████████████████████

████████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████

10. On September 24, 2021, I emailed the Butner facility on behalf of Parker Petit. I described his current treatment and history of cancer and asked them to confirm whether or not they will allow Mr. Petit to receive ████ while he is incarcerated. My email acknowledged that the facility like could not confirm that ████ would be provided, but noted that "it would be extremely helpful in planning for his incarceration to know whether its availability might be considered and approve[d]."

11. On September 27, 2021, I received an email response from the Office of the Executive Assistant at the Butner facility. The email response is attached here (Attachment 2) but did not confirm whether or not Mr. Petit will receive ████ The email stated simply: "Thank you for your inquiry and this information regarding Mr. Petit's medical status. I will forward this information to our medical team. In addition, Mr. Petit will undergo an in depth medical assessment when he arrives at the Federal Medical Center."

12. With the greatest level of confidence, I can opine that this medication will not be provided for Mr. Petit through BOP health services, he will not be allowed to purchase it through commissary or special order (for example, through Amazon), and his family will not be allowed to provide him with it. In short, he will not have access to ████████ while in a BOP facility.

13. If placed in a Residential Re-entry Center (halfway house) or on home confinement, Mr. Petit could continue to take this medication as recommended by his physicians, provided he procures it himself.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at Sparta, Georgia, on October 1, 2021.

_____
PHILLIP S. WISE
111 Sheep Creek Road
Sparta, Georgia 31087
478.456.4904
pswise@msn.com

## ATTACHMENT #1
## Resume for

Phillip Steven Wise
111 Sheep Creek Road
Sparta, Georgia 31087
Cellphone: 478-456-4904
Email: pswise@msn.com

## EDUCATION

High School:
Danbury High School
Danbury, Connecticut
Graduated June 1969

Undergraduate Studies:
Emory University
Atlanta, Georgia
Enrolled September 1969
Awarded BA (major in Psychology) August 1972
Awards: Phi Beta Kappa

Graduate School
University of Minnesota
Center for Research in Human Learning
September 1972 through May 1973

Georgia State University
School of Education
Enrolled 1975
Awarded M.Ed. (Counseling and Psychological Services) March 1977

## RELEVANT EMPLOYMENT

**Bureau of Prisons**
   **Psychology Technician**
   U.S. Penitentiary
   Atlanta, Georgia
   March 1977-September 1978
   Major Duties: Administration of psychological assessment instruments; collection, analysis and organization of material for completion of forensic evaluations; group and individual therapy; development and delivery of counselor training; general correctional duties.

**Case Manager**
U.S. Penitentiary
Atlanta, Georgia
September 1978-February 1981
Major Duties: Overall management of the cases of 250 federal convicted felons, to include reception; coordination with courts and pre-trial services; sentence monitoring; development of individual program plans; release planning; coordination with post release services.

**Case management Coordinator**
Federal Correctional Institution
El Reno, Oklahoma
February 1981- February 1983
Major Duties: Coordination of activities of 8 case mangers, development and implementation of local policy regarding inmate management; advise Warden about case management policy; coordinate institution activities with U.S. Parole Commission; coordinate activities related to Interstate Agreement on Detainers, International transfer of inmates, and extradition issues.

**Drug Abuse Treatment Unit Manager**
Federal Correctional Institution
Fort Worth, Texas
February 1983-October 1983
Major duties: Management of a comprehensive, residential drug treatment unit for 200 convicted federal felons; supervision of clinical psychologist, case managers, counselors, correctional officers and support staff; general correctional responsibilities.

**Instructor**
Bureau of Prisons Staff Training Academy
Federal Law Enforcement Training Center (FLETC)
Brunswick, Georgia
October 1983-April 1985
Major duties: Instructing new Bureau of Prisons employees in firearms, self-defense, and policy; development and implementation of practical exercises for new employees; development of computer based instruction programs; firearms instruction for staff from other federal law enforcement agencies.

**Assistant Regional Administrator for Correctional Programs**
North Central Regional Office
Bureau of Prisons
Kansas City, Missouri
April 1985 – October 1986
Major Duties: Assisted the Regional Administrator in the evaluation of correctional programs in the 15 correctional facilities located within the North Central Region;

management of inmate pay programs within the region; coordination of activities of the U.S. Parole Commission within the region.

### Regional Administrator, Correctional Programs
North Central Regional Office
Bureau of Prisons
Kansas City, Missouri
October 1986 – April 1988

Major Duties: Provided oversight of correctional programs (including unit management, case management, inmate performance pay, monitoring of disruptive groups, placement of newly sentenced inmates, separation of gang members, placement of federal inmates in state systems and receipt of state inmates in federal facilities), coordination of parole hearings and releases, coordination of release planning and coordination with offices of U.S. Probation, monitoring of interstate agreement on detainers, and coordination of movement of inmates.

### Executive Assistant, Correctional Programs Division
Central Office (Headquarters)
Bureau of Prisons
Washington, D.C.
April 1988 – May 1989

Major Duties: Provided administrative assistance to the Assistant Director of the Bureau of Prisons who was responsible for all correctional programs, including community corrections, case management, unit management, chaplaincy programs, psychology services, and custody and security. Managed transfer of inmates to and from other countries, working with the Department of State to administer international treaties, managed covert operations in conjunction with the Office of Enforcement Operations, Department of Justice.

### National Administrator, Correctional Programs Branch
Central Office (Headquarters)
Bureau of Prisons
Washington, D.C.
May 1989 – June 1990

Major Duties: Responsible for development of agency wide policy governing correctional programs, including case management, unit management, and management of disruptive groups. Oversight of programs agency wide in those areas, including a program of regular institution audits. Management of national program for the placement of Mariel Cubans and repatriation of those eligible, in conjunction with the Department of Justice, Department of State, Immigration and Naturalization Service and St. Elizabeth's Hospital. Participation in the development of administration social policy, including sentencing, legislative initiatives, and probation and parole policies.

### Executive Associate Warden
Federal Correctional Institution
Lexington, Kentucky
June 1990 – July 1991

Major Duties: Responsible for all operational areas of a major correctional facility with both male and female populations and a significant medical mission. Included direct responsibility for budget development and execution, facilities management, food service, health services, personnel, and training.

**Deputy Assistant Director**
Bureau of Prisons
Central Office (Headquarters)
Washington, D.C.
July 1991 – June 1994

Major Duties: Responsible for policy development and oversight of agency activities in information management and technology, research and evaluation, security technology, and international affairs. Oversaw operations of agency information management development, including expansion of legacy system and development of agency wide local and wide area networks, the migration to distributed data bases, and integration of systems with other components of the criminal justice system. Worked collaboratively with U.S. Marshal's Service and Immigration and Naturalization Service to implement a joint automated booking system as a demonstration project in the Vice President's initiative to reinvent government. Participated regularly with Department of Justice and other agency officials in the development of administration policies for the Department and White House regarding criminal justice issues, including sentencing and alternatives to incarceration, probation and parole policies, legislative initiatives and assessment of impact of legislative proposals. Participated in briefings of members of Congress, federal judges, and administration officials. Coordinated international assistance in corrections with Department of State and Department of Justice.

**Warden**
Federal Prison Camp
Alderson, West Virginia
June 1994 – September 1996

Major Duties: Responsible for the overall administration of a major prison camp for federal female offenders, including all operational areas such as custody, financial management with a budget of $20 million, facilities management, personnel and food service, as well as program areas such as unit management, case management, chaplaincy and psychology services, education, drug abuse treatment and vocational training programs. Of particular note were programs specifically designed for pregnancy, childbirth, and parenting.

**Warden**
Federal Medical Center for Prisoners
Rochester, Minnesota
September 1996 – March 1999

Major Duties: Responsible for the overall administration of a complex medical facility for federal prisoners, including the highest levels of inmate custody, all operational areas and program areas, an annual budget of $45 million, and management of contractual relationship with the Mayo Clinic. Management of medical and surgical inpatient and outpatient programs and populations, and in-patient, out patient and forensic mental health programs and populations. Responsible for ensuring compliance with all federal health care laws and regulations, ethical

medical decision making, and accreditation by external health care review organizations. Responsible for coordination of activities with other components of state and federal criminal justice components, including courts, probation and parole agencies, local, state and federal law enforcement organizations and other Department of Justice components. Participated in the development of health care policies for the Bureau of Prisons. Member of the U.S. Senior Executive Service.

**Assistant Director of the Federal Bureau of Prisons with responsibility for Health Services Division**

>Federal Bureau of Prisons
>Central Office (Headquarters)
>Washington, D.C.
>March 1999 – February 2, 2002
>Major Duties: Responsible for agency wide programs in health services, food

service, and safety, including policy development, integration of services across 93 institutions and 7 major medical referral centers, and oversight of those programs in each facility. Management and oversight of $500 million annual health services/food service budget. Participate as one of 15 members of the agency Executive Staff that makes major agency policy and personnel decisions and collectively directs operations of the agency components. Provide briefings to members of Congress and testimony at relevant Congressional hearings, provide briefings to senior administration officials and participate in the development of national social policies related to corrections, correctional health care, public health, post release services, and legislative initiatives. Member of the U.S. Senior Executive Service.

**Medical Development International**
**822 Highway A1A North, Suite 310**
**Ponte Vedra Beach, Florida 32082**

>**Vice President, Client Services**
>December 1, 2003 to September 30, 2005

Medical Development International (MDI) is a medical service organization that arranges for specialty health care for inmates in federal, state, local, and private correctional facilities. Through contractual arrangements with providers and correctional facilities, MDI assembles provider networks, schedules appointments, adjudicates bills and provides fund control assistance. Major duties include participating in development of company policies and strategies, oversight of operations, and intervention on behalf of clients in contract management.

**Consultant**
**140 Parham Rd. N.W.**
**Milledgeville, Georgia 31061**
**478-968-7907**

**September 30, 2005 to Present**

Currently serve as consultant regarding prison health care with focus on Federal Bureau of Prisons. I have provided declarations, affidavits and/or testified in over 30 cases, generally during the sentencing phase, in multiple Federal Judicial Districts including: Central District of California, Eastern District of California, Southern District of New York, Maryland, Southern District of Florida, Colorado, Eastern District of Kentucky, District of Puerto Rico, Eastern District of Pennsylvania, Western District of Arkansas, Northern District of Ohio, and Middle District of Tennessee.

ATTACHMENT #2
Communication with BOP

**From:** BUX-ExecAssistant-S
**Sent:** Monday, September 27, 2021 12:34 PM
**To:** PHILLIP WISE
**Subject:** Re: ▮▮▮▮▮

Good afternoon,
Thank you for your inquiry and this information regarding Mr. Petit's medical status. I will forward this information to our medical team. In addition, Mr. Petit will undergo an in depth medical assessment when he arrives at the Federal Medical Center.

*From the Office of the Executive Assistant~~*

*Please take care be safe~~*

>>> PHILLIP WISE <pswise@msn.com> 9/24/2021 10:15 AM >>>

Greetings,

I am writing on behalf of Mr. Parker Petit who is scheduled to report to FMC Butner on October 21, 2021 to begin service of a one year sentence. Mr. Petit has been diagnosed with recurring bladder cancer ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ His treating doctors, including his oncologist and urologist are on record as supporting this treatment regimen and note the significant risks to Mr. Petit if it is interrupted or discontinued. As a result of their opinions, the federal judge who sentenced Mr. Petit entered an Order which required the amendment of his PSR to include the ▮▮▮▮ treatment information.

Because treating bladder cancer with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ it is my assumption that this medication will not be made available to him either through commissary purchase (it is available on AMAZON), supplied by his family, or prescribed and provided through the institution's health services department. If this assumption is in error, and there is some method by which he might be allowed this medication, please let me know at your earliest convenience. I realize that you are likely unable to confirm that ▮▮▮▮ will be provided to Mr. Petit, but it would be extremely helpful in planning for his incarceration to know whether its availability might be considered and approve

Best regards,
Phillip Wise

Sent from Mail for Windows