```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------
UNITED STATES OF AMERICA

     -v-                              19-cr-850 (JSR)

PARKER H. PETIT,                      ORDER

          Defendant.
-----------------------------
```

JED S. RAKOFF, U.S.D.J.:

Before the Court is Defendant Parker H. Petit's motion for compassionate release. ECF 238 ("Mot."). Petit, who has suffered from recurrent bladder cancer, argues that he has received deficient oncological care since he surrendered to the custody of the Bureau of Prisons ("BOP") on October 21, 2021 to serve a one-year sentence for securities fraud. Specifically, Petit asserts that BOP's refusal to provide him with access to fenbendazole, a veterinary drug sold under the brand name Panacur that he credits with preventing the recurrence of his tumors, constitutes an extraordinary and compelling condition warranting modification of his sentence.

The Court has carefully reviewed the parties' extensive briefing and considered the helpful presentations at oral argument from counsel and from doctors for each side. The Court now concludes that Petit's motion does not establish the existence of an extraordinary and compelling condition warranting modification of his sentence. Accordingly, Petit's motion is denied.

I.  **Legal Standard**

District courts are authorized to modify a defendant's sentence under 18 U.S.C. § 3582(c)(1)(A)(i). The now-familiar standard requires the Court to "ask four questions: (1) has the defendant complied with the administrative exhaustion requirement, (2) has the defendant shown extraordinary and compelling reasons warranting a sentence reduction, (3) are the 18 U.S.C. § 3553(a) sentencing factors consistent with a lesser sentence than that previously imposed, and (4) is there a particular sentence reduction consistent with the § 3553(a) factors that is also warranted by extraordinary and compelling reasons." United States v. Garcia, 505 F. Supp. 3d 328, 331 (S.D.N.Y. 2020).[1] In United States v. Brooker, the Second Circuit held that the compassionate release statute, as revised by the First Step Act, vests district courts with the discretion to determine what facts amount to "extraordinary and compelling reasons" justifying release, when (as now) the Sentencing Commission has issued no on-point regulation defining that phrase and the existing Guidelines "now apply[] only to those motions that the BOP has made." 976 F.3d 235 (2d Cir. 2020). However, "[a]lthough the policy statements and application notes are no longer applicable post-Brooker, they are instructive." Garavito-Garcia v. United States, 2021 WL 2525037, at *4 (S.D.N.Y. June 21, 2021).

---

[1] Unless otherwise indicated, all internal alterations, omissions, emphases, citations, and quotation marks are omitted from all sources cited herein.

## II. Analysis

This motion turns on whether Petit's situation constitutes an extraordinary and compelling circumstance warranting modification of his sentence.[2] The Court assumes the parties' familiarity with the factual background and procedural history of this case and this motion.

Petit argues, in sum, that BOP has provided inadequate treatment for his recurrent bladder cancer and that release is necessary "to avoid having his 1-year sentence become a death sentence." Mot 2. Petit charges that "BOP has done nothing to prevent a recurrence of Mr. Petit's bladder cancer. It has not given Mr. Petit any cancer treatment or medication of any kind, or even confirmed that it will treat his cancer, let alone provide information about when he might receive treatment or what treatment he will receive." Id. at 4. However, the only specific treatment identified as lacking by Petit or his personal doctor, Dr. William H. Whaley M.D. F.A.C.P., is the provision of fenbendazole.

Fendendazole is a veterinary medication that the Food and Drug Administration has never approved for human use. See Declaration of Andrew Stock M.D., ECF 239-1 ¶ 18. Fenbendazole's primary use is as a veterinary de-worming agent, and it is readily available online without

---

[2] Petit made an administrative request to BOP, which was denied by the warden of FMC Butner in a letter dated December 6, 2021. See ECF 240-3. The Government does not dispute that Petit has satisfied the administrative exhaustion requirement.

a prescription.[3] Petit, who is not a medical doctor, avers that he took fenbendazole daily for 21 months before his surrender to BOP custody and that it permitted him "to achieve prolonged remission" of the cancer "with no side effects." Mot. 1-2.

In a declaration, Dr. Whalley explains that Petit took Fenbendazole "under my supervision, guidance, and with my concurrence ... because the fenbendazole is 'adjuvant treatment'--or treatment given to keep one's cancer from returning." Declaration of William H. Whaley M.D. F.A.C.P., ECF 240-2 ¶ 10. While Dr. Whaley does not say that he recommended that Petit take fenbendazole,[4] he explains that "[i]ncluding the adjuvant treatment of fenbendazole in a case like Mr. Petit's is important, advisable and consistent with the standard of care in his case, particularly where the standard protocols failed to prevent Mr. Petit's bladder cancer from returning." Id. Petit also points to a few articles that report case studies in which fenbendazole appeared to limit tumor growth in various types of cancers in patients like Petit, who had experienced recurrent tumors when taking standard oncological medications. See Mot. 4. In response, however, Dr. Adrian Ogle, BOP's contract urologist states in a declaration that fenbendazole does not appear in any treatment guidelines for bladder cancer, and that he was unable to locate an randomized controlled studies in which fenbendazole was used in the

---

[3] See, e.g., Burke, "Panacur for Dogs," American Kennel Club (May 31, 2017) https://www.akc.org/expert-advice/health/panacur-for-dogs/

[4] Nor could he, since it is not FDA approved for human use.

treatment of Petit's form of bladder cancer. Declaration of Adrian Ogle, M.D., ECF 243 ¶ 9.

Petit had earlier relied on treatment notes from Dr. Ogle's initial assessment. These notes stated at the end: "I would schedule him for a surveillance cystoscopy at the end of 01/2022, and he should be restarted on off label fenbendazole." ECF 240-1. Petit suggests that BOP then refused to provide Fenbendazole, because he was purportedly overruled by Dr. Stock, the FMC Butner medical director. See ECF 240 ("Reply") at 1. But Dr. Ogle has explained that he "was unfamiliar with fenbendazole" at the time of the initial assessment, and he now qualifies his earlier statement "after having an opportunity to learn more about fenbendazole" and "hav[ing] been unable to find any definitive literature supporting the off-label use of this medications in humans generally, or for the treatment of bladder cancer in humans." ECF 243 at 6-7 ¶¶ 5, 8.

Furthermore, as a "contract provider," Dr. Ogle lacks "the authority to determine the precise course of treatment or medications that an inmate will receive explains, so he avers that "my recommendation should be read to imply that Mr. Petit should be restarted on fenbendazole if permitted by the Bureau of Prison." Id. ¶ 5; see also Stock Decl. ¶ 11 (describing authorities in prison medical decision making). As explained by Dr. Andrew Stock, who is the physician at FMC Butner ultimately responsible for determining Petit's care, BOP policy on patient care prohibits "federal inmates in the custody of the BOP [from being] used as subjects for any non-

5

therapeutic medical experimentation" outside of "approved clinical trial[s]," as authorized by the relevant medical personnel.[5] Stock Decl. ¶ 19. One need not be an expert in the histories of prison conditions or medical experimentation to appreciate the rationality of such a policy. The Court further agrees that the prison authorities are entitled to enforce "reasonable limitations ... on what chemical compounds and drugs may be given to inmates." ECF 243 ("Sur-Reply") at 3.

The Court also disagrees with Petit's suggestion that Dr. Stock "dangled" "the prospect of fenbendazole ... before the Court." Reply 4. During pre-surrender litigation before this Court, the Government filed a letter from Dr. Stock committing only to a careful review of the treatment options, including fenbendazole, by the FMC Butner medical team and stating that fenbendazole administration would require higher-level approvals. ECF 228 at 7. It appears to the Court that FMC Butner's medical staff have in fact assessed Petit's condition and decided to follow the standard of care for his condition: cystoscopic surveillance every three-to-six months to detect any new tumor growth. Stock Decl. ¶ 17. It is undisputed that Petit has been scheduled for the scans, and neither Dr. Whaley nor Petit's counsel has identified any further steps FMC Butner should take under existing treatment guidelines or applicable standards of care. The Court acknowledges Petit's argument that his tumors have recurred in the

---

[5] The parties agree there are no qualifying clinical trials of fenbendazole in which Petit could participate.

6

past while receiving only standard treatments, but the Court is not equipped to set independent standards of oncological care.

While the Court cannot dismiss the possibility that fenbendazole has been efficacious in keeping Petit's cancer in remission, that conclusion remains speculative and unproven. Insofar as Petit asks to be excused from punishment for his crimes on the basis of an asserted entitlement to obtain uninterrupted access to fenbendazole, the Court finds it instructive to consider the framework under which Dr. Whaley says he condoned Petit's consumption of fenbendazole. During argument on the instant motion, Dr. Whaley explained his application of the oncologists' ethical principle of "the right to try:" a patient diagnosed with a terminal disease who has exhausted approved treatment options and is unable to participate in clinical trials may, with informed consent, consume an unapproved "investigational drug" under physician supervision.[6] As Dr. Whaley explained it, he allowed the fenbendazole regimen because he concluded that the drug posed little risk of meaningfully negative side effects for Petit and because Petit's cancer had not responded well to standard treatments. Accordingly, Dr. Whaley concluded that there "is no valid medical reason not to assist the patient in attempting to prevent the recurrence of a cancer." Whaley Decl. ¶ 15.

---

[6] This principle appears to be embodied in a 2018 federal law. See Pub. L. 115-176; see also F.D.A., "Right to Try," (Jan. 14, 2020), https://www.fda.gov/patients/learn-about-expanded-access-and-other-treatment-options/right-try. But Dr. Whaley appeared only to invoke the ethical framework in the oncology profession, not the formal regulatory process now set forth in federal law.

But an ethical principle permitting oncologists to support their patients in trying unapproved treatments does not establish for Petit an entitlement to access a medication with no approved human use in the tightly controlled environment of a prison medical center, especially when there is only limited, anecdotal evidence for fenbendazole's efficacy in fighting bladder cancer. Accordingly, the Court concludes that BOP's refusal to make administrative exceptions for Petit in this instance does not constitute an extraordinary and compelling reason warranting modification of his sentence. Crucially, this situation did not arise unexpectedly. Rather, the Court considered all the factors raised in Petit's motion when it determined the sentence Petit is now serving and when it reaffirmed that sentence three months ago by declining to suspend Petit's custodial sentence. Indeed, the Court initially imposed what it considered to be a very lenient custodial sentence for Petit's crimes of conviction, and it did so largely because of Petit's medical condition. The Court sees no reason now to modify that sentence.[7]

Petit's motion for compassionate release is therefore denied.

---

[7] Petit also argues that the elevated risk from the spread of COVID-19 within BOP facilities favors his release, given his immunocompromised status. But as counsel explained during argument, Petit recently contracted COVID-19. Assuming arguendo that this argument is not mooted by Petit's infection with the disease his requested relief was designed to let him avoid, the Court finds no extraordinary and compelling reasons justifying release on the basis of Petit's COVID-19 arguments. Petit is fully vaccinated against COVID-19, and he should have received a booster dose during the period when the Court postponed Petit's surrender so that he could get a booster dose. See ECF 209. Accordingly, the current state of the COVID-19 pandemic does not justify modification of his sentence.

SO ORDERED.

New York, NY
January 31, 2022

_____
JED S. RAKOFF, U.S.D.J.